William A. Rossbach
Rossbach Hart, P.C.
401 North Washington Street
Missoula, MT 59807
Phone: (406) 543-5156
bill@rossbachlaw.com

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.
555 Twelfth Street, Suite 1620
Oakland, CA 94607
Phone: (510) 622-8150
aradon@publicjustice.net
lbailey@publicjustice.net
(*Pro hac vice* admissions pending)

Richard Ramler
RAMLER LAW OFFICE, P.C.
202 West Madison Ave.
Belgrade, MT 59714
Phone: (406) 388-0150
RichardRamler@aol.com

*Attorneys for Intervenor Richard Barber*

FILED
DEC 07 2011
PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, MISSOULA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| LOUIS ALEKSICH, RAINELLE ALEKSICH, and BRENT ALEKSICH,<br><br>Plaintiffs,<br><br>v.<br><br>REMINGTON ARMS CO., INC., and E. I. DuPONT DE NEMOURS & CO.,<br><br>Defendants. | Cause No. CV-91-5-BU-PGH<br><br><br><br>**REPLY IN SUPPORT OF RICHARD BARBER'S MOTION TO INTERVENE** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... I

TABLE OF AUTHORITIES ............................................................................... II

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 2

I. REMINGTON'S ARGUMENTS ABOUT TIMELINESS FAIL. .................... 2

    A.    Mr. Barber's Motion is Timely ............................................................. 3

    B.    Mr. Barber Could Not Have Intervened Before *Aleksich* Settled. .......... 6

    C.    Remington Fails to Identify Any Prejudice ............................................ 7

II. REMINGTON'S OTHER CRITICISMS OF MR. BARBER AND HIS COUNSEL ARE IRRELEVANT ....................................................................... 9

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227 (1st Cir. 1992) ..... 6, 7

*Bromgard v. Montana*, CV-05-32-BLG-RFC-CSO, 2007 WL 2710379 (D. Mont. Sept. 13, 2007) ................................................................................................ 12

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983) ..... 1, 4

*Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992) ................ 11

*City of Hartford v. Chase*, 942 F.2d 130 (2d Cir. 1991) .......................................... 9

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ............ 9

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ........................... 3, 8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) ................................................................................................................. 11

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) ..................... 3, 8

*San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096 (9th Cir. 1999) .............................................................................................................. 2, 5, 11

*Stanley v. Remington Arms Co.*, W.D. La. No. 1:10-CV-01719-DDD-JDK ........ 5, 6

*Stotts v. Memphis Fire Dep't*, 679 F.2d 579 (6th Cir. 1982) ................................ 6, 7

*United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990) .......... 8

*United States v. General Motors*, 99 F.R.D. 610 (D.D.C. 1983) ............................. 4

**Statutes**

Federal Rule of Civil Procedure 24(b) ............................................................. 2, 8, 9

Mont. Code § 2-6-112 ................................................................................................ 8

## INTRODUCTION

"[C]ommon sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983). It is doubtful that this observation could ring any truer than in this case. In its eagerness to prevent the contents of the *Aleksich* court record from ever seeing the light of day, Remington throws out a grab-bag of reasons why Richard Barber should not be permitted to intervene, but not one of Remington's arguments provides a valid legal basis for denying his motion.

First, Remington's argument that Mr. Barber's motion is untimely fails to account for the fact that the public's interest in accessing the *Aleksich* court record has never been greater than the present moment. Remington *continues to maintain* that the Model 700 rifle is—and always has been—"safe, trusted and reliable," and "free of any defect since it was first produced," despite evidence to the contrary. Remington Arms, *Official Statement for CNBC Program Regarding the Model 700* (Sept. 7, 2010), *available at* http://www.cnbc.com/id/39554936 (follow "Remington's Official Statement to CNBC" hyperlink); *see also* Remington Arms Co., *Remington Model 700 Online Network*, http://remington700.tv/ (last visited Nov. 20, 2011). So long as Remington continues to represent to the public that the Model 700 is safe—and continues to deny the existence of any evidence to the contrary—the public's interest in accessing documents that reveal the truth (and Remington's knowledge of the truth) will be timely.

1

Second, Remington claims that the commonality of Mr. Barber's motion with the *Aleksich* litigation is "suspect." Remington Br. in Opp'n of Barber's Mot. to Intervene 15 (*hereinafter* "Remington Br."). But Remington provides no legal support for this assertion. Neither the fact that Mr. Barber resolved his own lawsuit against Remington years ago nor his efforts to assist plaintiffs in other litigation against Remington prevents Mr. Barber from intervening in this case to vindicate the public's right of access. Simply stated, "the right of access to court documents belongs *to the public,*" *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1101 (9th Cir. 1999), and Mr. Barber is fully entitled to seek *public* access to this court record regardless of his prior involvement with Remington.

Accordingly, Remington's challenges to Mr. Barber's motion to intervene fail.[1]

## ARGUMENT

### I. REMINGTON'S ARGUMENTS ABOUT TIMELINESS FAIL.

Remington makes a number of arguments as to why it believes Mr. Barber's motion to intervene does not satisfy the timeliness requirement of Federal Rule of Civil Procedure 24(b). As explained below, these arguments fail.

---

[1] Remington maintains that Judge Hatfield entered orders specifying which "portions" of the court record were to be sealed, but has not provided Mr. Barber with copies of any such orders. Remington Br. 2, Ex. A.

### A. Mr. Barber's Motion is Timely.

Remington argues that Mr. Barber's motion is untimely on the ground that he should have sought to unseal the *Aleksich* case file as soon as he learned about it. Remington Br. 11. However, as *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994), aptly explained:

> [I]n cases dealing with access to information, the public and third parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests. Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to have their day in court to contest the scope or need for confidentiality.

For this reason, *Pansy* held that motions to intervene for the limited purpose of challenging a confidentiality order are timely "even after the underlying dispute between the parties has long been settled." *Id.* (citation and internal quotation marks omitted).

More to the point, the public's right of access to court records does not have an expiration date. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 786 (1st Cir. 1988), explained that the public has a right of access to "cases decided a hundred years ago as surely as it does for lawsuits now in the early stages of motions litigation." *Id.* (citation and internal quotation marks omitted). This is because "[t]he fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case." *Id.*

3

As Mr. Barber has explained, although he became aware of *Aleksich* several years ago, he did not know until recently that Remington continues to incorporate the defective Walker Fire Control into its rifles. *See* Br. in Supp. Mot. to Intervene 12-13 (*hereinafter* "Barber Br."). Moreover, Mr. Barber only recently learned that *Remington continues to publicly maintain that its rifles are safe and that they have been "free of any defect" since the Model 700 was first produced.* Remington Arms, *Official Statement for CNBC Program, supra,* at 2. Mr. Barber is convinced that Remington's statements are belied by the company's own internal documents that were revealed in the *Aleksich* litigation, which show not only that the rifles *do* have a deadly defect, but also that Remington continues to lie to the public about its knowledge of such defects. Mr. Barber's intervention is especially timely now, given the ongoing deceit which will likely continue until the truth is revealed.[2]

Remington also suggests that the one year period between when Mr. Barber learned from CNBC that Remington continues to maintain its rifles are safe and

---

[2] As Mr. Barber will explain if the Court decides to hear the merits of his motion unseal the court record, many courts recognize that the public's interest in access to judicial records is strongest where those records concern public safety. *See, e.g., Brown & Williamson,* 710 F.2d at 1180-81 (vacating district court's order sealing judicial records where the "subject of this litigation potentially involves the health of citizens" who have "an interest in knowing how [a] government agency has responded to allegations of error in [its cigarette] testing program"); *United States v. General Motors,* 99 F.R.D. 610, 612 (D.D.C. 1983) (granting motion to unseal in case involving a safety-related defect in an automobile braking mechanism, noting that the "greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings") (citation omitted). Remington does not deny that the *Aleksich* record contains information relevant to public safety or that the public has a strong interest in access to the documents.

4

when Mr. Barber moved to intervene in this case somehow renders his motion untimely. Remington Br. 11, 13. But as explained in Mr. Barber's opening brief, "delays measured *in years* have been tolerated where an intervenor is pressing the public's right of access to judicial records." Barber Br. 17 (quoting *San Jose Mercury News*, 187 F.3d at 1101) (emphasis added); *see also* Br. 17-18 (listing cases).

One year is not an unreasonable amount of time for an intervenor to: (1) look into whether it would be possible to unearth a court record that has been shielded from public inspection for years; (2) locate and retain counsel on a *pro bono* basis; and (3) file all necessary papers and supporting documentation for a motion to intervene. Moreover, Remington neglects to mention that on February 16, 2011, it subpoenaed Mr. Barber in *Stanley v. Remington Arms Co.*, W.D. La. No. 1:10-CV-01719-DDD-JDK, which was pending in the U.S. District Court for the Western District of Louisiana, in an attempt to compel Mr. Barber to produce to the company all of the documents and records of correspondence he had collected involving Remington's rifles. Remington ultimately withdrew the subpoena on March 22, 2011 after Mr. Barber's counsel objected to it as, among other things, an improper attempt to harass Mr. Barber and chill his advocacy efforts, but that withdrawal occurred only after Mr. Barber's counsel had invested significant time and resources preparing to defend him against the subpoena. Remington cannot fault Mr. Barber for any purported "delay" here in filing his

5

motion to intervene when Remington itself improperly subpoenaed Mr. Barber, resulting in the diversion of attorney time from the *Aleksich* matter to *Stanley*.[3]

### B. Mr. Barber Could Not Have Intervened Before *Aleksich* Settled.

Remington cites two older cases from other circuits in attempt to argue that Mr. Barber has "adopt[ed] a 'wait and see' approach" that defeats his motion to intervene. Remington Br. 12 (citing *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 & n.3 (6th Cir. 1982) and *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992)). Both cases are easily distinguished. *Stotts* involved a class action alleging discrimination against the Memphis Fire Department, which was resolved by a consent decree reached by the parties after three years of discovery and four months of "intense negotiations." 679 F.2d at 580. A group of eleven firemen sought to intervene in the case to object to the decree two weeks after the court preliminarily approved it, even though the court found that the firemen had ample time before preliminary approval to have voiced their concerns and that they *knew in advance* that their rights would be affected. *Id.* at 583-84. These facts prompted the court to deny the motion to intervene on the ground that permitting the firemen to intervene to engage in additional discovery and expert analysis to challenge the decree "would be unfair and

---

[3] Remington also implies that Mr. Barber need not intervene because one of the law firms that represented him also represented the Aleksich family, and thus may already have provided him with at least some *Aleksich* documents. Remington Br. 11. Even if Mr. Barber had access to Aleksich documents through that firm, such access would do no good unless he were free to share the documents with the public—thus his goal of unsealing the sealed file.

6

inequitable" to the class members, who had waited long enough for overdue relief from the fire department's discriminatory policies. *Id.* at 584.

In *Banco Popular*, as in *Stotts*, the would-be intervenor had "squandered its opportunity to challenge the protective order" by "waiting until after [it] was embodied in a final judgment before attempting to intervene." 964 F.2d at 1231. The court denied intervention, noting that the intervenor had "a generous opportunity to challenge the protective order prior to the entry of final judgment." *Id.* at 1231.

The facts of *Stotts* and *Banco Popular* stand in sharp contrast to this case. Mr. Barber could not "wait and see" whether the parties in *Aleksich* would sufficiently represent his interests because by the time he learned of the case and could appreciate the significance of the material unearthed there, the case had already been settled and the records sealed. Indeed, it is difficult to imagine how Mr. Barber could have been more proactive in seeking the truth than he has been; as his declaration explains, he has been doing all that he possibly can on myriad fronts to expose this important public safety issue. It was Remington's decision to publicly deny the existence of any defects in its rifles that makes the unsealing of *Aleksich* the necessary next step.

### C. Remington Fails to Identify Any Prejudice.

Remington argues that Mr. Barber's motion to intervene should be denied because it "would also prejudice the parties to the *Aleksich* settlement." Remington Br. 14-15. Remington's only support for this argument, however, is that the Aleksiches have requested that the amount and terms of the settlement they

7

reached with Remington remain confidential. Even if Remington were correct that parties cannot "pick and choose" documents to remain under seal, *id.*, Remington has not explained how keeping settlement terms confidential while granting public access to the remainder of the court record would cause prejudice to either party.[4]

Remington cannot identify any prejudice here because there would be none. "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties, a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). Mr. Barber does not seek to "reopen the merits" of this case, *Liggett*, 858 F.2d at 786, but rather only to argue the discrete issue of whether the public should be granted access to the court record.

Moreover, Remington's suggestion that the fact that the parties settled the case suffices to demonstrate "prejudice," Remington Br. 8-9, has no support in the law. *See, e.g., Pansy*, 23 F.3d at 780 (squarely rejecting the argument that settlement should defeat a motion to intervene where the public's right of access is concerned). The parties to a lawsuit are in no position to bargain away the public's right of access to judicial records, but must instead demonstrate "compelling

---

[4] There is no support for Remington's assertion that the Aleksiches have somehow waived their right to consent to the unsealing of *Aleksich* by requesting that the terms of the settlement remain confidential. In fact, the Gus Barber Antisecrecy Act, Mont. Code § 2-6-112, provides that parties may keep the monetary amount of a settlement agreement confidential, but that courts must not "enter a final order or judgment that has the purpose or effect of concealing a public hazard."

8

reasons" why such documents should remain under seal, or else the "default posture of public access prevails." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1182 (9th Cir. 2006). [5]

Finally, the cases Remington cites, Remington Br. 14, for the proposition that courts have denied motions to intervene where the delays were shorter than the "delay" in this case are not controlling because *none* of these cases involved the public's right of access to court records, and *none* involved a hazardous product that *continues* to threaten the safety of the public long after the case had been terminated.

In short, Mr. Barber's motion to intervene should be granted because Remington has failed to demonstrate that his motion is untimely.

## II. REMINGTON'S OTHER CRITICISMS OF MR. BARBER AND HIS COUNSEL ARE IRRELEVANT.

Remington does not dispute that Mr. Barber satisfies Rule 24(b)'s commonality requirement, nor could it. Instead, Remington suggests that

---

[5] Remington's reliance on *City of Hartford v. Chase*, 942 F.2d 130 (2d Cir. 1991), for the proposition that intervention should be denied "where judicial assurance of confidentiality is part of the parties' decision to settle," Remington Br. 10, is misplaced. *City of Hartford* involved an intervenor who—unlike Mr. Barber—was aware of the litigation before the confidentiality order there was entered and could have challenged it before it was adopted. *Id.* at 136. The court stated that "sealing official documents should not be done without a compelling reason, *and interested parties should be given an opportunity to challenge the propriety of a sealing order before the decision is final.*" Thus, aside from the fact that intervention was permitted, *City of Hartford* is not helpful to Remington because the court took into account many factors—not just the parties' decision to settle—in reaching the conclusion that the protective order was proper.

9

intervention is somehow improper because Mr. Barber has been a resource for other plaintiffs injured by Remington rifles and because his family's claims against the company were already resolved. Neither of these is a legal basis for denying an intervention to seek public access to court records.

First, Remington argues that Mr. Barber's motion to intervene is "inappropriate" because he has helped other litigants with their claims against Remington. Remington Br. 16-17. Remington cannot identify a single authority restricting the type of work or activities in which a public access intervenor may engage. On the contrary, it stands to reason that the best representative of the public's interest in access will often be a person with expertise about the underlying issues. In this case, Mr. Barber's detailed knowledge of the Walker Fire Control makes him uniquely qualified to appreciate the contents of—and the value of public access to—the *Aleksich* record.[6]

Second, Remington suggests that the resolution of the Barbers' legal claims against the company arising from Gus's death bars Mr. Barber from now intervening in *Aleksich* to press the public's right of access. But in seeking to intervene for the limited purpose of challenging the ongoing sealing of *Aleksich*, Mr. Barber does not bring a single legal claim against Remington or seek any relief

---

[6] Remington lists a number of cases in which Mr. Barber has agreed to the terms of stipulated protective orders in order to serve as an expert advisor, as if this fact somehow makes the unsealing of the *Aleksich* court records improper. Remington Br. 5-7. On the contrary, the extent to which Remington requires protective orders—which it concedes prohibit Mr. Barber and others from releasing documents about Remington's products to the press and the public—makes unsealing *Aleksich* that more necessary.

10

from the company—and this Court need not make any determination as to the safety of the Walker Fire Control or the causes of Gus Barber's death (or Brent Aleksich's injury) in order to grant Mr. Barber's motion. While it is certainly Mr. Barber's hope that revealing the truth will encourage Remington to cease production of the Walker Fire Control, Remington cannot seriously claim that this is the legal equivalent of a new lawsuit by Mr. Barber against Remington because Mr. Barber is not asking the Court for any remedy from Remington. Rather, Mr. Barber seeks only to have this Court determine whether continued secrecy in this case is proper—an issue with which Remington need not even involve itself if it chooses. Therefore, the terms of the Barber family's resolution with Remington have no bearing on the present motion.

Equally importantly, the interest at stake in this case is not even Mr. Barber's; rather, it is the *public*'s interest that he represents—he seeks to intervene in order to obtain *public* access to a *public* record. No private litigant can waive the public's right of access to a public record. "The right of access to court documents *belongs to the public*," and Mr. Barber should be permitted to intervene in this case to vindicate that right to the same extent as any other member of the public. *San Jose Mercury News*, 187 F.3d at 1101; *see also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (it is "well settled in the law of the Supreme Court and th[e Ninth] [C]ircuit" that the *public* has a federal common law right of access to inspect judicial documents); *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("[A]bsent a showing a extraordinary circumstances . . ., the court file must remain *accessible to*

11

*the public*.") (emphasis added); *Bromgard v. Montana*, CV-05-32-BLG-RFC-CSO, 2007 WL 2710379, at *8 (D. Mont. Sept. 13, 2007) ("[J]udicial records are *public documents* almost by definition, and the *public* is entitled to access by default."). Accordingly, there is nothing about the fact that Mr. Barber reached a resolution in his own case against Remington that bars him from pressing the public's right of access to the court record in *Aleksich*.

## CONCLUSION

The Court should grant Mr. Barber's Motion to Intervene so that it can reach the important question of whether there is a valid legal ground for the continued sealing of the *Aleksich* records.

DATE: December 7, 2011

Respectfully submitted,

William A. Rossbach
ROSSBACH HART, P.C.

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.

Richard Ramler
RAMLER LAW OFFICE, P.C.

*Attorneys for Intervenor Richard Barber*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2) of the United States District Court Rules for the District of Montana, I certify that the word count calculated by Microsoft Word is 3,242 words, excluding the caption and certificates of service and compliance.

Dated this 7th day of December, 2011.

Respectfully submitted,

William A. Rossbach

*Attorney for Intervenor*
*Richard Barber*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 7th day of December, 2011, a true and correct copy of the foregoing document was forwarded by U.S. mail and email to the parties listed on the service list below.

Robert M. Carlson
CORETTE POHLMAN & KEBE
129 West Park Street
P.O. Box 509
Butte, MT 59703

Louis Aleksich
1216 West Aluminum
Butte, MT 59701

DATE: December 7, 2011

Respectfully submitted,

William A. Rossbach

*Attorney for Intervenor Richard Barber*