William A. Rossbach
ROSSBACH HART, P.C.
401 North Washington Street
Missoula, MT 59807
Phone: (406) 543-5156
bill@rossbachlaw.com

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.
555 Twelfth Street, Suite 1230
Oakland, CA 94607
Phone: (510) 622-8150
aradon@publicjustice.net
lbailey@publicjustice.net
(*Pro hac vice* admissions pending)

Richard Ramler
RAMLER LAW OFFICE, P.C.
202 West Madison Ave.
Belgrade, MT 59714
Phone: (406) 388-0150
RichardRamler@aol.com

*Attorneys for Richard Barber*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LOUIS ALEKSICH, RAINELLE ALEKSICH, and BRENT ALEKSICH,<br><br>Plaintiffs,<br><br>RICHARD BARBER,<br><br>Intervenor,<br><br>vs.<br><br>REMINGTON ARMS CO., INC., and E. I. DuPONT DE NEMOURS & CO.,<br><br>Defendants. | Cause No. CV-91-5-BU-PGH<br><br><br><br>**BRIEF IN SUPPORT OF RICHARD BARBER'S MOTION TO UNSEAL *ALEKSICH* COURT FILINGS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

INTRODUCTION ........................................................................................1

THE SEALED DOCUMENTS........................................................................2

ARGUMENT ..............................................................................................6

I.    MR. BARBER'S MOTION TO UNSEAL SHOULD BE GRANTED
      BECAUSE CONTINUED SEALING OF THE REMAINING
      *ALEKSICH* COURT FILINGS IS IMPROPER UNDER FEDERAL
      COMMON LAW AND THE FIRST AMENDMENT. ....................................6

      A.    The Public Has a Common Law Right of Access to the *Aleksich*
            Court Filings...........................................................................7

      B.    The Public Has a First Amendment Right of Access to the
            *Aleksich* Court Documents.....................................................12

      C.    The Public Interest in Court Documents Is Heightened Where,
            As Here, the Sealed Documents Contain Information
            Concerning Public Safety........................................................15

      D.    The Presumption of Access Mandates that the Court Filings be
            Unsealed Immediately.............................................................18

II.   MR. BARBER RESERVES THE RIGHT TO SEEK PUBLIC
      ACCESS TO ANY UNFILED DISCOVERY MATERIAL AND
      SEALED DISCOVERY MATERIAL ATTACHED TO NON-
      DISPOSITIVE MOTIONS IN THIS CASE. ..................................................19

CONCLUSION ..........................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Associated Press v. U.S. District Court for Central District of California*,
705 F.2d 1143 (9th Cir. 1983) ..................................................... 18, 19

*Bromgard v. Montana* CV-05-32-BLG-RFC-CSO, 2007 WL 2710379 (D.
Mont. Sept. 13, 2007) ........................................................................11

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165
(6th Cir. 1983) ................................................................. 2, 12, 15, 16

*EEOC v. Erection Co., Inc.*, 900 F.2d 168 (9th Cir. 1990) ......................................9

*Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122
(9th Cir. 2003) ............................................................. 2, 6, 7, 8, 10, 18

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir.
1994) .............................................................................. 12, 19

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) ..................................... 6, 7, 9

*In re Air Crash at Lexington, Ky., August 27, 2006*, No. 5:06-CV-316-KSF,
2009 WL 1683629 (E.D. Ky. June 16, 2009) ......................................16

*In re Gitto Global Corp.*, 422 F.3d 1 (1st Cir. 2005) ...............................................8

*In re Providence Journal Co., Inc.*, 293 F.3d 1 (1st Cir. 2002) ...............................8

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172
(9th Cir. 2006) ............................................................... 6, 7, 8, 18

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ............. 12, 19

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)...........................................6

*Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462
(9th Cir. 1990) ...................................................................... 12, 13, 14

*Phase II Chin, LLC v. Forum Shops, LLC*, No. 2:08-cv-00162-JCM-GWF,
2010 WL 2695659 (D. Nev. July 2, 2010) ...........................................8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th
Cir. 2002) ..........................................................................7

*Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010).............................9

*Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) ........... 12, 13, 14

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)...............................13

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988).................12

*San Jose Mercury News, Inc., v. U.S. District Court,* 187 F.3d 1096 (9th Cir. 1999)................................................................................................... 10, 20

*Sell v. American Family Mutual Insurance Company* CV 09-135-BLG-RFC-CSO, 2010 WL 3488690 (D. Mont. Aug. 26, 2010) ...........................................11

*Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000) .....................8

*United States v. Barer*, No. 06-MC-9021-BR, 2007 WL 445538 (D. Or. Feb. 2, 2007) .........................................................................................................13

*United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188 (9th Cir. 2011)............................................................................................7

*United States v. General Motors*, 99 F.R.D. 610 (D.D.C. 1983) .................... 16, 17

*Virginia Dept. of State Police v. Washington Post,* 386 F.3d 567 (4th Cir. 2004)............................................................................................... 12, 14

## Statutes

Fed. R. Civ. P. 26(c)................................................................................. 19, 20

## Other Authorities

CNBC, *The Remington 700*, *available at* http://www.cnbc.com/id/39554936 (last visited Oct. 7, 2011) ................................................................................17

Remington Arms, *Official Statement for CNBC Program Regarding the Model 700* (Sept. 7, 2010), *available at* http://www.cnbc.com/id/39554936/ (follow "Remington's Official Statement to CNBC" hyperlink) .................................................................. 3, 17

## INTRODUCTION

Richard Barber was granted intervenor status in *Aleksich v. Remington Arms Co.*, Cause No. CV-91-5-BU-PGH, by Order of this Court on February 7, 2012, so that he could move the Court to obtain public access to the sealed court file in this case. *Aleksich* involved alleged defects in the trigger mechanism of the Model 700-series bolt-action rifle ("Model 700") that was designed and manufactured by Remington Arms Company ("Remington").[1] On February 27, 2012, this Court ruled *sua sponte* to unseal the court file, noting that Judge Hatfield, who presided over the *Aleksich* matter and who entered a broad protective order in 1995 sealing the entire case, had vacated that order on December 22, 1995 with respect to all but a handful of documents.[2] Order at 2, Feb. 27, 2012. After finding "no reason for sealing the entire case," this Court ordered that the only documents that were to remain under seal in the *Aleksich* court file were those specifically identified in Judge Hatfield's December 22, 1995 Order (hereinafter, the "December Order"). *Id.* The December Order remains under seal pursuant to language in the Order itself. *Id.* at 2-3.

Mr. Barber now requests that this Court unseal the remaining sealed *Aleksich* court filings, which include the December Order and the documents

---

[1] At the time the *Aleksich* case was filed, Remington was being operated as a division of E. I. Dupont de Nemours & Co., and DuPont was also a defendant in the suit. For the sake of simplicity, both companies are referred to herein as "Remington."

[2] Judge Hatfield is now deceased.

sealed pursuant to that Order (documents numbered 390 through 406 and 410 on the Court's docket), because the public has a right of access to these filings.[3]   The strong presumption of public access to judicial filings can only be overcome by a sufficiently "compelling reason" for secrecy that outweighs the public's interest in accessing the court documents.  *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  The public's interest is even stronger where, as here, the court filings at issue contain information relevant to public health and safety. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176 (6th Cir. 1983).  Accordingly, unless Remington can articulate a sufficiently compelling reason to overcome the public's substantial interest in obtaining access to the remaining eighteen sealed court filings in this case, this Court should unseal these filings immediately.

## THE SEALED DOCUMENTS

Mr. Barber's strong interest in obtaining public access to the *Aleksich* court file was set forth in great detail in his Brief in Support of Motion to Intervene and supporting Declaration, which were both filed on October 21, 2011.  To briefly summarize, Mr. Barber sought public access to the *Aleksich* court file because the same type of fire control that allegedly malfunctioned in that case also killed his

---

[3] Although this Court's February 27, 2012 Order describes the December Order as sealing document numbers 399 through 406 and 410, Remington has informed Mr. Barber's counsel that it believes the December Order contained a typographical error, and that the Order should have sealed documents 3**90** through 406, and 410. *See* Ramler Decl.*,* attached as Ex. A.  Regardless, as this Brief explains, all of these sealed court filings should be publicly available.

2

nine-year-old son Richard "Gus" Barber five years after *Aleksich* was settled. *See* Declaration of Richard Barber ("Barber Decl.") ¶¶ 5-13 (attached as Ex. A to Mr. Barber's Br. in Support of Mot. to Intervene).[4] Since his son's death in 2000, Mr. Barber has become a key educational resource to the media and public in exposing the propensity of the Model 700's fire control to malfunction and cause the rifle to fire without a trigger pull. Barber Decl. ¶¶ 27-28, 36. He worked with Remington to develop a safer alternative trigger design and also negotiated with management to persuade Remington to replace the hazardous trigger mechanism with the safer design. *Id*. ¶¶ 29-34.

Now that this Court has taken the significant step of unsealing the vast majority of the *Aleksich* court file, Mr. Barber believes that the public will finally be able to see for itself that Remington has known of the fire control's dangerous defects for decades, yet has continued to manufacture the rifles in order to maximize profits—all the while publicly maintaining that its rifles are safe. *See* Remington Arms, *Official Statement for CNBC Program Regarding the Model 700* (Sept. 7, 2010), *available at* http://www.cnbc.com/id/39554936/ (follow "Remington's Official Statement to CNBC" hyperlink) ("The Model 700, including its trigger mechanism, has been free of any defect since it was first produced . . . .").

---

[4] Mr. Barber's declaration was intended only to substantiate his interest in obtaining public access to the *Aleksich* court file; factual questions as to whether and why certain Remington rifles fire without a trigger pull were not at issue for purposes of his motion to intervene, nor are they at issue for this motion.

However, the eighteen documents that remain under seal in this case almost certainly contain information that is critical for public understanding of Remington's efforts to hide the truth about its rifles.  In particular, Docket Entry 410 is a transcript of a hearing that occurred on March 28, 1995.  *See* Dkts. 399, 410.  According to the limited information on the docket and in the Brief in Support of Plaintiffs' Motion for Sanctions (Dkt. 367), it was at this hearing that the Court addressed allegations that Remington had failed—for three years—to produce several boxes of evidence that directly proved Remington's knowledge of the propensity of its Model 700 rifles to fire without a trigger pull.  *See* Br. in Supp. Pls.' Mot. for Sanctions, Dkt. 367, at 7-10.  While Judge Hatfield ordered that an official transcript be produced of "any and all proceedings on the record of 03/28/95," Dkt. 399, that transcript was later sealed, Dkt. 410.

Additional documents that remain under seal appear to involve a request by Remington for sanctions and a contempt order against the Aleksiches and/or their counsel at the time, Richard Miller.  *See* Dkts. 390-91 (application and supporting memorandum "for Order to Show Cause and For Findings of Contempt"); Dkts. 392-406 (pleadings and orders involving Remington's application for sanctions and its motion for findings of contempt).  It further appears that the Court ultimately denied Remington's requests for sanctions and a contempt order.  *See* Dkts. 405-06.

Given Remington's success at hiding the truth so that it can publicly maintain that its rifles have been "free of any defect" since first produced, the public has an enormous interest in obtaining access to any court document that

4

speaks to Remington's extraordinary efforts to conceal the hazards of its best-selling rifles.[5] If Remington sought sanctions and findings of contempt against the Aleksiches and/or Mr. Miller in an effort to keep the information unearthed in this case about the Model 700's defects from ever reaching the public or another injured victim, the public has a powerful interest in knowing that. For the same reason, the public has a considerable interest in obtaining access to the hearing transcript where the Court addressed the plaintiffs' motion against Remington for alleged discovery abuse. As Mr. Barber explained in his Declaration, only after the public is armed with the truth about the Model 700's defects *and* the full extent of Remington's efforts to conceal those defects will Mr. Barber be able to obtain his ultimate goal of educating the public so that tragedies like the death of nine-year-old Gus Barber will not befall other families in the future. *See* Barber Decl. ¶¶ 41-42.

---

[5] As Mr. Barber explained in his Declaration, Barber Decl. ¶ 23-24, Remington routinely insists on court secrecy in cases involving the Model 700. One of the most recent examples of Remington's efforts to shield documents that reveal the defects of its rifles occurred in the case of *Quinonez v. Remington Arms Co.,* No. 2:11-cv-02319-NVW (D. Ariz. Feb. 10, 2012). In *Quinonez*, the plaintiffs filed a number of exhibits, including some that were stamped "Aleksich," as attachments to their response to Remington's motion to dismiss that spoke to the existence of the Model 700's defect as well as to Remington's knowledge of those defects. *Quinonez*, Dkt. 23 (*Aleksich* documents were attached at Dkt. 23-1, Ex. G, H; Dkt. 23-2, Ex. I, J, N; Dkt. 23-6, Ex. 5-8, 12). Eleven days after these documents were filed, however, Remington—consistent with its *modus operandi*—successfully petitioned the court to place these documents under seal. *See* Order, *Quinonez v. Remington Arms Co.,* No. 2:11-cv-02319-NVW (D. Ariz. Feb. 21, 2012).

**ARGUMENT**

**I.      MR. BARBER'S MOTION TO UNSEAL SHOULD BE GRANTED
BECAUSE CONTINUED SEALING OF THE REMAINING
*ALEKSICH* COURT FILINGS IS IMPROPER UNDER FEDERAL
COMMON LAW AND THE FIRST AMENDMENT.**

The right to access court filings is firmly protected by the federal common

law and the First Amendment.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

589, 597 (1978) ("It is clear that the courts of this country recognize a general right

to inspect and copy public records and documents, including judicial records and

documents.").  In the Ninth Circuit, court filings may only be sealed where the

proponent of sealing has "articulate[d] compelling reasons supported by specific

factual findings that outweigh the general history of access and the public policies

favoring disclosure."  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172,

1178-79 (9th Cir. 2006) (internal quotation marks and citations omitted).

Given that the December Order that sealed the remaining eighteen *Aleksich*

documents is itself under seal, it is impossible to know whether the Court

articulated the specific factual findings and compelling reasons necessary to justify

continued secrecy.  The "compelling reasons" standard was not clearly articulated

by the Ninth Circuit in the context of a civil case until 1995, *Hagestad v.

Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995), and the law has continued to

develop since.  Regardless, even if sealing was not improper at the time the

December Order was entered, no legal basis justifies keeping the remaining

eighteen documents that were sealed pursuant to that order from public inspection

now.  *See, e.g. Foltz,* 331 F.3d at 1136 (noting that the *Hagestad* "compelling

6

reasons" standard governs whether court filings and discovery filed with dispositive motions may be sealed).  Accordingly, as explained below, this Court should grant Mr. Barber's Motion to Unseal and provide the public immediate access to the remaining sealed *Aleksich* court filings.[6]

### A.   The Public Has a Common Law Right of Access to the *Aleksich* Court Filings.

It is "well settled in the law of the Supreme Court and the[ Ninth] [C]ircuit" that the public has a federal common law right of access to inspect judicial documents.  *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002).  Thus, as the Ninth Circuit has repeatedly stated, the analysis of whether sealing court filings is warranted must always begin with the "strong presumption in favor of [public] access."  *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194-95 (9th Cir. 2011) (citations omitted); *Kamakana*, 447 F.3d at 1178; *Foltz*, 331 F.3d at 1135.

The burden is on the party in favor of court secrecy to overcome this strong presumption of public access.  *Hagestad*, 49 F.3d at 1434.  The presumption can "be overcome only on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture."  *Id.*  To meet its burden, the proponent of sealing must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies

---

[6] As explained in Part II, *infra*, Mr. Barber also reserves the right to seek public access to unfiled discovery materials and sealed discovery materials attached to any non-dispositive motions in this case at a later date.

favoring disclosure." *Kamakana*, 447 F.3d 1178-79 (internal quotation marks and citations omitted); *see also In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) ("[O]nly the most compelling reasons can justify the non-disclosure of judicial records."); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification."); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 11 (1st Cir. 2002) (applying compelling reason standard).

A desire to avoid public scrutiny of alleged wrongdoing is not a sufficient legal basis for waiving the public's right of access to court filings.  As the Ninth Circuit has explained, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *Foltz,* 331 F.3d at 1136; *see also Phase II Chin, LLC v. Forum Shops, LLC*, No. 2:08-cv-00162-JCM-GWF, 2010 WL 2695659 at *2 (D. Nev. July 2, 2010) ("The mere suggestion that embarrassing allegations . . . might harm a company commercially if disclosed in publicly available pleadings does not meet the burden of showing specific harm will result.").[7]  Moreover, the "compelling reasons" standard for sealing court filings applies to *all* judicial documents filed with the court, including discovery materials attached to dispositive motions.  *Foltz*, 331 F.3d at 1135.

---

[7] For the Court's convenience, all unpublished decisions are attached.

Where district courts have sealed court filings without articulating sufficient reasons for doing so, the Ninth Circuit has vacated the decision and remanded with orders to apply the appropriate legal standards.  For example, in *Hagestad*, the Ninth Circuit reviewed an order of the District of Oregon sealing the entire court record of a case that had been settled pursuant to a "confidentiality compromise agreement."  49 F.3d at 1432, 1434 n.8.  The case involved allegations that a member of the Oregon State Bar had sexually abused a minor.  *Id.* at 1432-33. After the parties settled the civil suit, the State Bar intervened in the action to obtain the pleadings and documents in the court record.  The defendant then moved to seal the entire court record, and the trial court granted the motion.  *Id.* at 1433. On appeal, the Ninth Circuit found that meaningful review of the sealing order was impossible because "the district court failed to articulate any reason in support of its sealing order."  *Id.* at 1435.  Noting that the party's motion to seal the court record failed to make the requisite showing of compelling reasons, the court vacated the decision and remanded for the district court to make the appropriate findings.  *Id.*; *see also Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (reversing district court's order sealing discovery material attached to dispositive motions where the court neglected to determine whether compelling reasons exist to seal the documents at issue); *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 169 (9th Cir. 1990) (reversing an order sealing documents because the district court had failed to articulate "any reasoning or findings underlying its decision" to seal the court documents).

9

Compelling reasons for continued sealing are required even if the documents in question were filed under seal pursuant to a protective order. In *Foltz*, the plaintiffs alleged that State Farm had conspired with a medical review company to defraud hundreds of personal injury victims of coverage to which they were entitled under their policies. 331 F.3d at 1127-28. After several years of litigation, during which discovery was governed by stipulated protective orders, the parties agreed to a confidential settlement and requested that the court file be sealed. *Id.* at 1128. When the district court granted the request, non-party public interest groups and litigants in other cases intervened in order to unseal the records. *Id.* at 1128-29. On appeal, the Ninth Circuit directed the district court to release all records for which compelling reasons for continued secrecy had not been demonstrated. *Id.* at 1139.

Likewise, in *San Jose Mercury News, Inc., v. U.S. District Court,* 187 F.3d 1096, 1101 (9th Cir. 1999), the parties stipulated to a protective order that made documents concerning an alleged sexual harassment suit against a police department confidential. When a non-party newspaper moved to intervene to unseal the records, the defendant police department objected on grounds that it had relied on the stipulated protective order. *Id.* The Ninth Circuit dismissed the defendant's argument, holding that it was not a basis for denying the public's right of access. As the court explained, "[t]he right of access to court documents belongs to the public, and the [parties] were in no position to bargain that right away." *Id.* at 1101.

10

In recent years, this Court has faithfully refused to seal court filings absent compelling reasons.  For example, in *Bromgard v. Montana*, intervenor *The Billings Gazette* sought access to information that was subject to a protective order under which the parties could not disseminate documents to anyone not involved in the litigation.  The Court explained that "judicial records are public documents almost by definition, and the public is entitled to access by default."  CV-05-32-BLG-RFC-CSO, 2007 WL 2710379, at *8 (D. Mont. Sept. 13, 2007).  Because no party had shown compelling reasons to overcome the common law presumption of access, the Court held that documents filed with the court were "part of the public record and not precluded from access."  *Id.* at *9.  Further, the Court cautioned that any party seeking to seal attachments to dispositive motions in the future would be required to offer compelling reasons for the seal.  *Id.*

Similarly, in *Sell v. American Family Mutual Insurance Company*, this Court denied an unopposed motion for a blanket sealing order because the parties had ignored the legal standards and had not even attempted to demonstrate compelling reasons for the documents to be sealed.  CV 09-135-BLG-RFC-CSO, 2010 WL 3488690 at *2 (D. Mont. Aug. 26, 2010).  The Court noted that "[i]t is reversible error for a court to issue an order sealing documents connected with dispositive motions without considering the compelling reasons standard."  *Id*. at *2.

In this case, the eighteen court filings that remain under seal in this case are presumed open to the public under federal common law.  Unless Remington can *now* articulate compelling reasons supported by specific factual findings that

outweigh the public's strong interest in access, this Court should grant Mr.

Barber's Motion and immediately unseal these remaining documents.

**B.     The Public Has a First Amendment Right of Access to the**
         ***Aleksich* Court Documents.**

In addition to the federal common law right, the Ninth Circuit has

recognized that, at least in criminal cases, "[u]nder the first amendment, the press

and the public have a presumed right of access to court proceedings and

documents."  *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d

1462, 1465 (9th Cir. 1990).  While the Ninth Circuit has not yet applied this First

Amendment right to civil proceedings, the underlying policy favoring transparency

and public scrutiny of government activity applies with equal force in both the civil

and criminal contexts—as the Second, Third, Fourth, Sixth, and Seventh Circuits

have all held.  *See, e.g., Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070

(3d Cir. 1984) ("Public access to civil trials, no less than criminal trials, plays an

important role in the participation and the free discussion of governmental

affairs."); *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 124 (2d Cir. 2006);

*Virginia Dept. of State Police v. Washington Post,* 386 F.3d 567, 575 (4th Cir.

2004); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th

Cir. 1994) (superseded by rule on other grounds); *Rushford v. New Yorker

Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Brown & Williamson Tobacco

Corp.*, 710 F.2d at 1165.[8]  At least one court in this Circuit has likewise held that

---

[8] In applying the First Amendment right to records of civil proceedings, courts
have relied on the U.S. Supreme Court's decision in *Richmond Newspapers, Inc. v.*
*cont'd on next page*

the First Amendment right to court records applies in the civil context.  *United States v. Barer*, No. 06-MC-9021-BR, 2007 WL 445538 (D. Or. Feb. 2, 2007) (granting newspaper's motion to unseal court records pertaining to alleged Medicare fraud investigation).

Once a First Amendment right is found, it can be "overcome only by an overriding right or interest 'based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Oregon Pub. Co*, 920 F.3d. at 1465 (citation omitted).  The party seeking to restrict access must present specific reasons in support of its position and demonstrate that any available alternatives would not protect its interests.  *Id.*

This is a high threshold that is not easily met.  For example, the court in *Publicker Industries*, 733 F.2d at 1074, addressed whether "sensitive" information involving the fact that a subsidiary of the petitioner was manufacturing scotch without a permit should be accessible to the public.  The court held that such information was "not the kind of confidential commercial information that courts have traditionally protected," but instead "simply involve[d] a matter of poor

---

*Virginia*, 448 U.S. 555 (1980).  In *Richmond Newspapers*, the Court held that the First Amendment guarantees that criminal trials are presumptively open to the public.  *Id.* at 573, 580.  Chief Justice Burger noted that the issue of whether civil trials were similarly open was not before the Court, but he nevertheless observed, "historically both civil and criminal trials have been presumptively open."  *Id.* at 606 n.17.  Justice Stewart, concurring in the opinion, stated, "the First and Fourteenth Amendments clearly give the press and the public a right of access" to trials, "civil as well as criminal."  *Id.* at 599 (Stewart, J., concurring).

management." *Id*.  The court therefore concluded that the district court had abused its discretion in restricting the public's access to a hearing and transcript.  *Id*.

Similarly, at issue in *Virginia Department of State Police*, 386 F.3d at 577-78, was whether documents regarding a murder investigation that had been attached to a summary judgment motion in a civil suit should remain sealed.  The police department argued that there was a compelling government interest in keeping these documents from the public to "protect[] the integrity of an ongoing law enforcement investigation."  *Id*. at 579.  The Fourth Circuit disagreed, holding that "it is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information."  *Id*.  The court therefore concluded that the police department had "failed to present a compelling government interest that is sufficient to keep these documents sealed."  *Id*.

Here, if this Court determines that the public has a First Amendment right to the *Aleksich* court filings, Remington bears the burden of demonstrating an "overriding right or interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Oregon Pub. Co.*, 920 F.3d. at 1465.  It is difficult to imagine any "overriding interest" or "higher values" that would be strong enough to justify the continued sealing of a hearing transcript involving alleged discovery abuse in this case, or the continued sealing of documents that speak to a company's efforts to seeks sanctions and contempt findings against injured victims and their legal counsel.  As the Sixth Circuit noted,

14

"common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know." *Brown & Williamson Tobacco*, 710 F.2d at 1180.  Mr. Barber therefore respectfully requests that this Court grant his Motion to Unseal on the basis that the public has a First Amendment right of access to the remaining sealed *Aleksich* court filings.

### C. The Public Interest in Court Documents Is Heightened Where, As Here, the Sealed Documents Contain Information Concerning Public Safety.

The public's interest in the sealed *Aleksich* court filings is especially strong given that this case involves important issues of public safety.  In particular, Mr. Barber has an interest in exposing Remington's actions to conceal the defects of its dangerous rifles from an unsuspecting public so that the public can learn for itself the lengths to which Remington has gone over the past 60+ years to shield itself from accountability.

Courts have uniformly held that the public's interest in access to court documents is strongest when those documents concern public safety.  For example, in *Brown & Williamson Tobacco*, 710 F.2d 1165, the trial court had sealed judicial filings relating to the content of tar and nicotine in various brands of cigarettes. The Sixth Circuit vacated the lower court's orders, emphasizing the strong public interest:

> The subject of this litigation potentially involves the health of citizens who have an interest in knowing the accurate "tar" and nicotine content of the various brands of cigarettes on the market. The public has an interest in knowing how the government agency has responded to allegations of error in the testing program. The public has

15

> an interest in ascertaining what evidence and records the
> District Court and this Court have relied upon in reaching
> our decisions.

*Id.* at 1180-81.

In *In re Air Crash at Lexington, Ky., August 27, 2006*, No. 5:06-CV-316-KSF, 2009 WL 1683629, at *1 (E.D. Ky. June 16, 2009), the district court likewise noted the strong public interest in accessing documents involving public safety. The plaintiffs alleged that an airline's pilots had been negligent and that their negligence had caused a fatal accident. *Id.* The airline filed a motion to keep all depositions confidential. In denying the motion, the court emphasized that "the public interest in a plane crash that resulted in the deaths of forty-nine people is quite strong, as is the public interest in air safety." *Id.* at *8 (citation omitted).

Similarly, in *United States v. General Motors*, 99 F.R.D. 610 (D.D.C. 1983), the court weighed the public's interest in disclosure of documents regarding auto safety against an auto manufacturer's interest in avoiding adverse publicity. In this case, the National Highway Traffic Safety Administration ("NHTSA") had conducted an administrative investigation of General Motors ("GM"). During the investigation, GM submitted information to NHTSA under seal. *Id.* Subsequently, the United States brought an action alleging that GM had failed "to reveal or to remedy a safety-related defect in the braking mechanism" of over a million of its vehicles. *Id.* at 612. The United States filed a motion to unseal the documents that GM had previously submitted to NHTSA. GM argued that the documents should

16

remain sealed because releasing them would "generate adverse publicity and do harm to its reputation."  *Id.*

The D.C. Circuit held that, in order to justify sealing the documents from public scrutiny, the court would have to find that unsealing would cause GM "substantial and serious harm," that any sealing order would need to be "narrowly drawn and precise," and there must be "no alternative means of protecting GM's interest . . . which intrudes less directly on the constitutionally protected interests served by conducting judicial proceedings in public."  *Id.*  The court found that GM's embarrassment from unsealing the documents was *not* a substantial and serious harm that "justif[ied] concealing what would otherwise be in the public domain altogether."  *Id.*  In granting the motion to unseal, the court emphasized that the "greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings."  *Id.* (citation omitted).

In this case, as in the cases described above, the public has an overwhelmingly strong interest in gaining access to court records that may expose Remington's efforts to keep a safety hazard in "one of the world's most popular firearms" a secret.  CNBC, *The Remington 700*, *available at* http://www.cnbc.com/id/39554936 (last visited Oct. 7, 2011).  Releasing these remaining eighteen sealed court filings back into the public domain where they belong is not only required by law; it will also enable the public to arm itself with information about the accuracy of Remington's public statement that its rifles are "safe, trusted, and reliable," and "free of any defect," *see* Remington Arms, *Official Statement for CNBC Program Regarding the Model 700, supra,* and to

17

more critically evaluate any statements about the safety of the Model 700 that the company may release in the future.  Accordingly, this Court should grant the public access to the remaining eighteen sealed *Aleksich* court filings under the federal common law, First Amendment, or both.

    **D.**    **The Presumption of Access Mandates that the Court Filings be Unsealed Immediately.**

Because court filings are public by default, the remaining sealed *Aleksich* documents should be released as soon as it is determined that there is no longer any valid basis for continued secrecy.  The Court "need not document compelling reasons to *un*seal; rather the proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails."  *Kamakana*, 447 F.3d at 1181-82 (emphasis added).

Thus, in *Foltz*, when the Ninth Circuit found that the district court had not applied the appropriate "compelling reasons" test to court documents under the common law standard, the court instructed the lower court to immediately release specific documents, "along with all other court records for which compelling reasons for secrecy have not been demonstrated."  *Foltz*, 331 F.3d at 1135, 1139.

Similarly, in *Associated Press v. U.S. District Court for Central District of California*, 705 F.2d 1143, 1147 (9th Cir. 1983), after the district court ordered all documents filed in a criminal case to be automatically sealed, the Ninth Circuit vacated the order because the burden to overcome the First Amendment presumption had not been met.  The Ninth Circuit stated that "ordinarily, documents sealed under an unconstitutional order would be released immediately."

*Id.*  However, noting that the parties may have filed certain documents in reliance on a protective order, the court gave the parties *three days* to provide such "sufficiently specific . . . document-by-document" justification.  *Id*.  All other documents were ordered "unsealed immediately."  *Id.*; *see also Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 126 (2d Cir. 2006) (noting that the circuit courts "emphasize the importance of immediate access where a right to access is found"); *Grove Fresh Distributors,* 24 F.3d at 897 ("[O]nce found to be appropriate, access should be immediate and contemporaneous.").

In short, under federal common law and the First Amendment, the sealed court filings in the *Aleksich* case are presumptively public.  Unless Remington can now demonstrate compelling reasons for keeping these eighteen remaining documents under seal, the public should be granted immediate access to them.

## II.    MR. BARBER RESERVES THE RIGHT TO SEEK PUBLIC ACCESS TO ANY UNFILED DISCOVERY MATERIAL AND SEALED DISCOVERY MATERIAL ATTACHED TO NON-DISPOSITIVE MOTIONS IN THIS CASE.

Given the sheer volume of the court file, which was made public just last week, Mr. Barber is not currently in a position to determine whether any discovery material unearthed by the parties in this case remains under seal or is otherwise unavailable for public inspection due to the location of the material or for other reasons.  While the public has a heightened right of access to court filings and discovery materials attached to dispositive motions under both the federal common law and the First Amendment, Federal Rule of Civil Procedure 26(c) also provides

19

the public a right of access to discovery materials that have *not* been filed with the court, as well as to discovery materials attached to non-dispositive motions. Rule 26(c) provides, in relevant part, that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Thus, to the extent that Mr. Barber determines—after thoroughly reviewing the contents of the case file and applicable protective order(s) in this case—that discovery materials have been improperly shielded from public access, Remington will bear the burden of demonstrating that there is "good cause" for continued secrecy—and that this good cause outweighs the public's interest in the materials. *San Jose Mercury News,* 187 F.3d at 1103 ("It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown."). Therefore, Mr. Barber respectfully reserves the right to re-petition this Court at a later date to assert the public's right of access to any unfiled discovery materials and discovery materials attached to non-dispositive motions to the extent any such materials remain under seal.

## CONCLUSION

The Court should unseal the remaining sealed *Aleksich* court filings.

20

Respectfully submitted this 8th day of March, 2012.


/s/  William A. Rossbach
William A. Rossbach
ROSSBACH HART, P.C.

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.
(Pro hac vice admissions pending)

Richard Ramler
RAMLER LAW OFFICE, P.C.

*Attorneys for Intervenor Richard Barber*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A) of United States District Court Rules for the District of Montana, I certify that the word count calculated by Microsoft Word is 4,987 words, excluding captions and certificates of service and compliance.

Respectfully submitted this 8th day of March, 2012.

/s/  William A. Rossbach
William A. Rossbach
ROSSBACH HART, P.C.

*Attorney for Intervenor Richard Barber*

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2012, I served a true and accurate copy of the foregoing, BRIEF IN SUPPORT OF RICHARD BARBER'S MOTION TO UNSEAL ALEKSICH COURT FILINGS, on the following counsel, by the method indicated below:

**Table 1**

| | |
|---|---|
| Robert M. Carlson | [X] U.S. Mail |
| CORETTE POHLMAN & KEBE | [ ] Overnight Mail |
| 129 West Park Street | [ ] Hand Delivery |
| PO Box 509 | [ ] Facsimile |
| Butte, MT 59703 | [X] E-Mail |
| Louis Aleksich | [X] U.S. Mail |
| 1216 West Aluminum | [ ] Overnight Mail |
| Butte, MT 59701 | [ ] Hand Delivery |
| | [ ] Facsimile |
| | [X] E-Mail |

Respectfully submitted this 8th day of March, 2012.


    /s/ William A. Rossbach
William A. Rossbach
ROSSBACH HART, P.C.

*Attorney for Intervenor Richard Barber*