**Robert M. Carlson**
**CORETTE POHLMAN & KEBE**
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH    :  406-782-5800
FAX  :  406-723-8919
bcarlson@cpklawmt.com

**Attorney for Defendants**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| LOUIS ALEKSICH, RAINELLE ALEKSICH, and BRENT ALEKSICH<br><br>Plaintiffs,<br><br>RICHARD BARBER,<br><br>Intervenor,<br><br>v.<br><br>REMINGTON ARMS CO., INC., and E. I. DuPONT DE NEMOURS & CO.,<br><br>Defendants. | Cause No. CV-91-5-RFC<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO RICHARD BARBER'S MOTION TO UNSEAL**<br><br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Remington Arms Co., Inc. and E.I. du Pont de Nemours & Co. (collectively, "Defendants"), by their undersigned attorney, oppose the Motion of Richard Barber to Unseal ("Motion to Unseal").

## I. INTRODUCTION

Mr. Barber's Motion to Unseal should be denied. Even though the *Aleksich* case settled nearly 17 years ago, there is one issue on which the Intervenor and the Defendants now agree: the terms and conditions of confidential settlements are and should remain confidential. Represented by the same attorney who represented the Aleksich family (Richard Miller), Mr. Barber settled his own lawsuit against Defendants in 2002 with confidentiality as to the terms and conditions of the settlement. In fact, it was Mr. Barber, <u>not</u> Defendants, who insisted the Barber lawsuit be settled with confidentiality. Like the confidential resolution of the Barber lawsuit, the only portion of the *Aleksich* lawsuit that remains confidential are the materials ordered sealed by Judge Hatfield as part of the consideration for the settlement.

On February 27, 2012, the Court entered an Order unsealing most of the *Aleksich* court file, and directing the Clerk to retain Docket Nos. 399-406 and 410 under seal because, pursuant to Judge Paul G. Hatfield's Order of December 22, 1995, the other 400-plus docket entries were not supposed to be sealed. (ECF 425).[1]

---

[1] The Docket Report and Judge Hatfield's orders indicate that he intended to seal docket entries ***390*** (Defendants' Application for Order to Show Cause and for Finding of Contempt) through 406 and 410, rather than only ***399*** through 406 and 410. The Docket Report itself shows docket entries 390 through 398 having been sealed by Judge Hatfield. *See also* Affid. of Richard Ramler, ECF 427-1, at ¶¶ 5-7.

Defendants recognized early on in the present dispute that Judge Hatfield's sealing Order of December 22, 1995 vacated his prior sealing of the entire file and, therefore, in response to Mr. Barber's motion to intervene, noted such to the Court. (ECF 420 at p. 1-2, n. 1). Judge Hatfield intended to seal only those materials related to the quid-pro-quo that resulted in the *Aleksich* settlement. As a result, Mr. Barber's Motion to Unseal the remaining court records fundamentally misses the mark because the remaining confidential filings are part of the *Aleksich* settlement. Just as Judge Hatfield ruled when he presided over the *Aleksich* lawsuit in 1995, the terms and conditions of the confidential settlement of *Aleksich* should remain in full force and effect.

## II. ADDITIONAL BACKGROUND OF THE *ALEKSICH* CASE

In late March 1995, the *Aleksich* matter was set for a jury trial before Judge Hatfield. (Dkt. Entry 384).[2] On the eve of trial, Thursday, March 23, 1995, the Plaintiffs' lead attorney, Mr. Miller, filed a motion for discovery sanctions against Defendants with respect to the alleged late supplemental production of documents

---

[2] The chronology of events described herein was derived from the Docket Report and its corresponding entries which are publicly available on PACER and attached hereto as Exhibit A. The 1990s *Aleksich* court filings are not available on PACER. For the purposes of this brief, citation to "Dkt. Entry" indicates the proposition was derived from the Docket Report rather than from the underlying paper filing.

he claimed were relevant to the underlying lawsuit.  (Dkt. Entry 366; and Memo in Support, Dkt. Entry 367).[3]

On Friday, March 24, 1995, Plaintiffs filed a motion to continue the trial date because of the "new documents recently produced." (Dkt. Entry 368).  The trial was set to begin on Monday, March 27, 1995, and as the Court noted on that same date, "30 jurors, [counsel], parties and Court [were] present and ready to proceed." (Dkt. Entry 384).   At 1:30 p.m., however, the Court "excused the jurors" until Wednesday, March 29, 1995 at 9:00 a.m.  (Dkt. Entry 384).

On Tuesday, March 28, 1995, the parties settled the case.  (Dkt. Entry 385).  At that time, Judge Hatfield ordered "[a]ll settlement conditions, terms, transcript and any [motions] for sanctions are to be sealed and confidential." (Dkt. Entry 385).  As part of the quid-pro-quo for settlement, the Plaintiffs' attorney, Mr. Miller, agreed to withdraw his motion for discovery sanctions previously filed with the Court as Docket Nos. 366 and 367.[4]

---

[3]   To be clear, Defendants produced the supplemental discovery documents at issue to Mr. Miller in 1995 during the *Aleksich* case, and Mr. Miller's firm retained those documents after the conclusion of *Aleksich*.  Mr. Miller then represented Mr. Barber in 2001-2002 in Mr. Barber's own lawsuit against the Defendants.  Thus, Mr. Miller and Mr. Barber had access then to all of the documents produced by Defendants to Mr. Miller in *Aleksich*, including the supplemental production at issue in the *Aleksich* sanctions motion.

[4]   The *Aleksich* lawsuit settled before Defendants filed a response brief to the plaintiff's sanctions motion.  Needless to say, Defendants vigorously disagree with the basis for and the argumentative contentions of Mr. Miller's sanctions motion.

The withdrawal of the sanctions motion as a part of the settlement consideration was memorialized in Judge Hatfield's Order of April 7, 1995, which provided in pertinent part "that the [plaintiff] file his [motion] to w/draw his [motion] for sanctions by 04/08/95[.]" (Dkt. Entry 386). The unnumbered docket entry of April 25, 1995, indicates that in keeping with the bargained for terms of the settlement agreement, the Plaintiff's motion "to w/draw [the motion] for sanctions" was entered with the Court on April 25, 1995.

On April 24, 1995, Mr. Miller executed the Stipulation for Dismissal of the *Aleksich* lawsuit. (A copy of the Stipulation for Dismissal is attached hereto as Exhibit B). That stipulation was entered with the Court on May 9, 1995. (Dkt. Entry 388). The terms and conditions of the stipulation included that "[t]he parties further agree that the court may approve the settlement, may order its conditions to be performed, and may specify those sanctions which will be imposed upon breach of confidentiality of this release." Exhibit B at p. 2, ¶ 1. The stipulation further provided that

> [i]n the event of a violation of the confidentiality agreement or the Order effectuating the agreement, the Court shall find the violating party in contempt and levy such fine or sanction as appropriate to the type and manner of the information disclosed.

---

Regardless, since the supplemental production of documents in *Alekisch*, those documents have been categorically available to litigants for use in future litigation, including for use by Mr. Miller in his representation of Mr. Barber in Mr. Barber's lawsuit in 2001-2002.

Id. at p. 2, ¶ 2.

In the summer of 1995, Defendants learned that Mr. Miller had disseminated his *Aleksich* sanctions motion to other plaintiffs' attorneys involved in litigation with Defendants. That motion for discovery sanctions was the very motion Mr. Miller had agreed to withdraw and which Judge Hatfield had Ordered sealed as part of the *Aleksich* settlement. (Dkt. Entry 385,"[a]ll settlement conditions, terms, transcript and any [motions] for sanctions are to be sealed and confidential.").

On July 5, 1995, Remington filed an Application for an Order to Show Cause against Mr. Miller (and not the Aleksich family) for violating the terms of the settlement and the Court's sealing orders. (Dkt. Entry 390). Docket entries 390 through 406 and 410 are all filings related to Defendants' Application for an Order to Show Cause against Mr. Miller. Those filings contained information related to the content of Mr. Miller's motion for discovery sanctions that he agreed to withdraw as part of the *Aleksich* settlement. As such, each of those docket entries was placed under seal by Judge Hatfield because the materials centered on the very terms and conditions of the settlement agreement that resolved the *Aleksich* case. (Dkt. Entry 406).

After Judge Hatfield's denial of their Application for an Order to Show Cause, Defendants appealed to the Ninth Circuit and, on January 24, 1996, filed a Motion to File Documents Under Seal with the Ninth Circuit. (A copy of the

Motion to File Documents Under Seal and Memorandum in Support Thereof, is attached hereto as <u>Exhibit C</u>). On February 15, 1996, the Ninth Circuit granted Defendants' motion, ordering that "[a]ll documents submitted to this court must be sealed in envelopes with the court of appeals docket number, case title, and the name of the document typed on the outside." (A copy of the Ninth Circuit's Order of February 15, 1996, is attached hereto as <u>Exhibit D</u>). Mr. Miller had filed a late response to Defendants' request for filing under seal; however, on March 14, 1996, the Ninth Circuit rejected Mr. Miller's position. (A copy of the Ninth Circuit's Order of March 14, 1996, is attached hereto as <u>Exhibit E</u>). As Judge Hatfield had done in sealing the settlement terms in *Alekisch*, the Ninth Circuit reaffirmed that such materials should remain confidential and under seal.

## III. <u>BARBER'S MOTION SHOULD BE DENIED</u>

The terms and conditions of the *Aleksich* settlement should remain in full force and effect. "Once settlement efforts are completed and embodied in a final judgment, the parties expect to be able to tailor their future actions and decisions in reliance on that judgment," and "courts have long recognized the systemic benefits of policies favoring the voluntary resolution of disputes." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992). *See generally Ahern v. Central Pacific Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) ("The

Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements" and "[t]here is an overriding public interest in settling and quieting litigation") (citations and quotations omitted)); *Defenders of Wildlife v. Salazar*, 776 F.Supp.2d 1178, 1189 (D. Mont. 2011) ("Ninth Circuit policy generally favors settlement"). "Sneak attacks on the terms of a fully consummated settlement disserve these salutary policies, undermining the finality of judicial decrees and depriving the original litigants of choices that were theirs to make." *Banco Popular de Puerto Rico*, 964 F.2d at 1232.

The finality, terms and conditions of the *Aleksich* settlement agreement were the result of an arms-length negotiation approved by Judge Hatfield. To this day, the Aleksich family maintains that they, like Mr. Barber in his case, want information as to the amount and terms of their settlement to remain confidential and out of the public domain. (*See* Louis Aleksich Aff. at ¶ 5, ECF 415-2). Given his insistence on the confidentiality of the amount and terms of his own settlement, Mr. Barber cannot credibly maintain that the terms of confidentiality agreed to by the Aleksich family (through Mr. Miller) and Defendants and approved by Judge Hatfield are less deserving of protection.[5]

---

[5]   Defendants and Mr. Barber agree on another issue: "factual questions as to whether and why certain Remington rifles fire without a trigger pull were <u>not</u> at issue for the purposes of [Mr. Barber's] motion to intervene, <u>nor</u> are they at issue for this motion." Barber's Motion to Unseal at p. 3, n. 4 (emphasis added).

Contrary to Mr. Barber's public interest argument to *carte blanche* overrule Judge Hatfield's orders, materials such as pre-trial settlement terms and conditions are compellingly deserving of confidentiality.  Protecting the confidentiality of the settlement terms and conditions promotes the important public policy of encouraging settlements. *See Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F. Supp. 370, 373 (E.D. Pa. 1993); *see also FDIC v. Ernst & Ernst*, 92 F.R.D. 468, 472 (E.D.N.Y.1981) (unsealing a settlement that was based upon confidentiality would discourage future settlements based upon confidentiality), *aff'd*, 677 F.2d 230 (2d Cir.1982); *see also* FED. R. EVID. 408 advisory committee note (purpose of rule making evidence of settlement negotiations inadmissible is to encourage settlement).  Moreover, settlement of disputes is in the public interest because it avoids the significant costs of trial. *Id*.; *Cf. Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993); *Ernst & Ernst*, 92 F.R.D. at 472.

---

Defendants, however, strongly disagree with any claim by Mr. Barber, either directly or by innuendo, that Model 700 bolt-action rifles, including those incorporating the so-called "Walker fire control," are in any way defective.  In fact, a recent federal jury found that the Model 700 rifle with a "Walker fire control" was not defective.  *See* Special Verdict Form 1, ECF 127, *Hull v. Remington Arms Co., Inc.*, No. CV-10-05010 (W.D. Wash., Apr. 19, 2011), a true and correct copy of which is attached hereto as Exhibit F (jury found in individual action based on same alleged defect in the Model 700 rifle that Remington did not "supply a product that was not reasonably safe as designed at the time the product left its control").

In addition to conservation of judicial and private resources, settlement results in higher levels of satisfaction of the litigants, having determined their own solution to their dispute rather than being subject to a judicially-created solution. *Kalinauskas*, 151 F.R.D. at 365; *In re New York County Data Entry Worker Prod. Liab. Litig.*, 162 Misc. 2d 263, 267, 616 N.Y.S.2d 424 (NY Sup. Ct. 1994) *aff'd*, 222 A.D.2d 381, 635 N.Y.S.2d 641 (1995). "Most importantly, a settlement produces finality and repose upon which people can order their affairs." *In re New York County Data Entry Worker Prod. Liab. Litig.*, 162 Misc.2d at 268, 616 N.Y.S.2d 424.

Mr. Barber's proposition—that "even if sealing was not improper at the time the December [22, 1995] Order was entered, no legal basis justifies keeping the remaining eighteen documents that were sealed pursuant to that order from public inspection now"—is equally shortsighted and without merit. On the contrary, there is a clear basis justifying continued confidentiality. Confidentiality is a recognized term and condition without which many lawsuits would remain unsettled. *See City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir.1991) (judicial assurance of confidentiality prerequisite to settlement); *Marine Midland Realty Credit Corp.*, 821 F.Supp. at 373 ("confidentiality is often essential to the settlement of cases"); *Ernst & Ernst*, 92 F.R.D. at 470 (confidentiality vital to a party).

While protecting the confidentiality of settlement agreements encourages settlements, which is in the public interest, permitting disclosure would undoubtedly discourage settlements thereby overwhelming courts and litigants, contrary to the public interest. *Cf. Kalinauskas*, 151 F.R.D. at 365 (allowing discovery of confidential settlements would discourage similar settlements; settlement benefits society); *Ernst & Ernst*, 92 F.R.D. at 472 (modifying confidentiality order would discourage future settlements based upon confidentiality; public interest furthered by settlement). Clearly, there is a fundamental public interest in maintaining confidentiality of settlements.

Finally, Mr. Barber misconstrues the burden to modify Judge Hatfield's orders and the confidential settlement between Defendants and the Aleksiches by attempting to place the onus on Defendants. *Cf. FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982) (once confidentiality order is entered and relied upon, it can be modified only if "extraordinary circumstances" or "compelling need" warrants modification); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981) (less than the most compelling circumstances is enough to prevent access to records not involving trial proceedings).[6]

---

[6] Mr. Barber's argument further misses the mark by claiming that Judge Hatfield's December 22, 1995 sealing order should not stand because it was rendered without the guidance of the Ninth Circuit's decision in *Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. Mar. 13, 1995). (*See* Barber's Motion to Unseal at p. 6). Mr. Barber's argument makes little sense chronologically because Judge

The bottom line remains that the parties settled *Aleksich* because, in part, Mr. Miller agreed to withdraw his motion for sanctions and the Court's assurances of confidentiality. *Cf. Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143-44 (2d Cir. 2004) (holding that the details of a confidential settlement agreement disclosed during a "conference relating to settlement," on the basis of the court's "assurances of confidentiality," warranted only a "weak" presumption of public access).

Having presided over the *Aleksich* case, Judge Hatfield was in the best position to make the decisions he made in 1995. Disturbance of his orders and the agreement between the Aleksich family and Defendants nearly two-decades later would defeat the 1995 agreement of the parties and the public policy of encouraging settlements.

---

Hatfield's order was entered more than 8-months *after* the *Hagestad* opinion. Moreover, Mr. Barber's argument is further undercut because the Ninth Circuit, in fact, reviewed the sealed materials in the *Aleksich* appeal, reviewed a motion to seal documents filed on appeal and, thereafter, granted Defendants' request to seal all filings on the appeal *in 1996*, over one year *after* its opinion in *Hagestad*. (*See* Exhibit D). Clearly, both Judge Hatfield's December 22, 1995 sealing order and the Ninth Circuit's sealing order *in this case* should remain undisturbed.

## C O N C L U S I O N

For all of the foregoing reasons, the Intervenor's Motion to Unseal should be denied.

DATED this 20th day of March, 2011.

Respectfully submitted,

s/ Robert M. Carlson
Corette Pohlman & Kebe
Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the requirements of Local Rule 7.1(d)(2). The total word count in the brief is 2,146 words, excluding the caption and certificates of service and compliance. The undersigned relies on the word count of the word processing system used to prepare this brief.

/s/ Robert M. Carlson
CORETTE POHLMAN & KEBE
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2012, a copy of the foregoing document was served on the following persons by the following means:

1,2,3 and 4 by and through the Electronic Case Filing System, and 5 by U.S. Mail

1.  Clerk, U.S. District Court

2. William A. Rossbach
   Rossbach Hart, P.C.
   401 North Washington Street
   Missoula, MT  59807
   bill@rossbachlaw.com

3. Amy Radon
   Leslie A. Bailey
   Public Justice, P.C.
   555 Twelfth Street, Suite 1620
   Oakland, CA  94607
   aradon@publicjustice.net
   lbailey@publicjustice.net

4. Richard Ramler
   Ramler Law Office, P.C.
   202 West Madison Avenue
   Belgrade, MT 59714
   RichardRamler@aol.com

5. Louis Aleksich
   1216 West Aluminum
   Butte, MT  59701

                                                             /s/ Robert M. Carlson
                                                             Corette Pohlman & Kebe
                                                             Attorneys for Defendants