William A. Rossbach
ROSSBACH HART, P.C.
401 North Washington Street
Missoula, MT 59807
Phone: (406) 543-5156
bill@rossbachlaw.com

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.
555 Twelfth Street, Suite 1230
Oakland, CA 94607
Phone: (510) 622-8150
aradon@publicjustice.net
lbailey@publicjustice.net
(admitted *pro hac vice*)

Richard Ramler
RAMLER LAW OFFICE, P.C.
202 West Madison Ave.
Belgrade, MT 59714
Phone: (406) 388-0150
RichardRamler@aol.com

*Attorneys for Richard Barber*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| LOUIS ALEKSICH, RAINELLE ALEKSICH, and BRENT ALEKSICH,<br><br>Plaintiffs,<br><br>RICHARD BARBER,<br><br>Intervenor,<br><br>vs.<br><br>REMINGTON ARMS CO., INC., and E. I. DuPONT DE NEMOURS & CO.,<br><br>Defendants. | Cause No. CV-91-5-RFC<br><br><br><br>**REPLY BRIEF IN SUPPORT OF RICHARD BARBER'S MOTION TO UNSEAL *ALEKSICH* COURT FILINGS**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ..............................................................................................1

ARGUMENT .....................................................................................................2

I.   REMINGTON HAS FAILED TO MEET ITS BURDEN OF ARTICULATING COMPELLING REASONS OR A NARROWLY-TAILORED OVERRIDING INTEREST SUFFICIENT TO JUSTIFY CONTINUED SECRECY. ...........................................................................2

   A.   Remington Has Not Demonstrated Compelling Reasons for Continued Secrecy Sufficient to Overcome the Public's Federal Common Law Right of Access. ...............................................3

   B.   Remington Has Not Demonstrated a Narrowly-Tailored Overriding Interest Sufficient to Overcome the Public's First Amendment Right of Access. ...................................................8

II.  AS A FACTUAL MATTER, PERPETUAL SEALING OF THE REMAINING DOCUMENTS COULD NOT HAVE BEEN BARGAINED-FOR CONSIDERATION FOR THE SETTLEMENT. ...........8

   A.   Non-Substantive Procedural Records. ....................................9

   B.   Records Involving Remington's Application for Findings of Contempt and Sanctions Against Mr. Miller. .........................9

   C.   Records Involving the Transcript of the March 28, 1995 Hearing. ..................................................................................12

Conclusion .......................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Bank of Am. Natl. Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339 (3d Cir. 1986) ........................................................................... 5

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) .................... 3, 7

*City of Hartford v. Chase*, 942 F.2d 130 (2d Cir. 1991) ..................................... 7, 11

*Daines v. Harrison,* 838 F. Supp. 1406 (D. Colo. 1993) ........................................... 5

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ....................... 7, 8, 12

*Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir. 1995) ........................................... 1, 3

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ............................. 7

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ...... 1, 3, 4

*Oregonian Pub. Co. v. U.S. Dist. Ct.*, 920 F.2d 1462 (9th Cir. 1990) ............. 1, 3, 8

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ................................ 4

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940 (1998) ........................... 6

*S.E.C. v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993) .................................... 5

*San Jose Mercury News, Inc., v. U.S. District Court,* 187 F.3d 1096 (9th Cir. 1999) ........................................................................................................................ 5

*United States v. General Motors*, 99 F.R.D. 610 (D.D.C. 1983) ............................. 7

*Warth v. Dep't of Justice*, 595 F.2d 521 (9th Cir. 1979) ....................................... 6, 7

**INTRODUCTION**

What is striking about Remington's brief opposing public access to the remaining sealed *Aleksich* records is what it *fails* to address. Remington does not, as controlling Ninth Circuit case law requires, identify "articulable facts" demonstrating compelling reasons for the continued secrecy of each sealed document, let alone show how such facts overcome the public's common law right of access. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006). Nor does Remington present a narrowly-tailored overriding interest "based on findings that closure is essential to preserve higher values" sufficient to overcome the public's First Amendment right. *See Oregonian Pub. Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990).

Instead, Remington proposes that this case turns on the "public interest in settling and quieting litigation," Remington Br. 8, and asserts that "confidentiality of settlement agreements encourages settlements," *id.* at 11. This is precisely the sort of "unsupported hypothesis or conjecture," *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995), that courts routinely hold is insufficient to justify court secrecy.

Remington's recitation of the facts is equally flawed. The company maintains that "the only portion of the *Aleksich* lawsuit that remains confidential" is that "sealed by Judge Hatfield as part of the consideration for the settlement," Remington Br. 2, and that "the remaining confidential filings *are part of* the *Aleksich* settlement," *id.* at 3 (emphasis added). In truth, *none* of the remaining

sealed documents even existed at the time the parties settled.  Moreover, by Remington's own admission, the company settled in order to avoid the risk of being sanctioned—not to ensure the perpetual confidentiality of future court filings.

Accordingly, Mr. Barber's Motion to Unseal should be granted.

**ARGUMENT**

I. **REMINGTON HAS FAILED TO MEET ITS BURDEN OF ARTICULATING COMPELLING REASONS OR A NARROWLY-TAILORED OVERRIDING INTEREST SUFFICIENT TO JUSTIFY CONTINUED SECRECY.**

Remington identifies only one reason to keep the remaining records sealed: the sealing was "consideration for [the parties'] settlement." Remington Br. 2.  The factual implausibility of that claim will be addressed in Part II, but even if this statement were true, Remington's interest in protecting settlement agreements is *not* a legally sufficient basis to overcome the public's right of access here.[1]

First, *Remington*—not Mr. Barber—has the burden of satisfying the "compelling reasons" standard under federal common law and the "overriding interest" standard under the First Amendment to keep these records under seal.

---

[1] Remington claims that it "recognized early on" that the order sealing the entire file had been vacated, and that it "noted such to the Court." Br. 3.  But the cited brief contains no such notification, and Remington certainly never informed Mr. Barber—who, unlike Remington, did not have access to the sealed court docket— that the bulk of the sealed court file had already been unsealed.  Instead, Remington vigorously opposed Mr. Barber intervening to unseal the file, protesting that it would "prejudice the parties."  Doc. 420 at 14.

2

*See Kamakana,* 447 F.3d at 1181-82 (under federal common law, "the proponent of sealing bears the burden with respect to sealing," and "[a] failure to meet that burden means that the default posture of public access prevails"); *Oregonian Pub. Co.,* 920 F.2d at 1467 (under First Amendment, "the party seeking access has the benefit of the presumption that disclosure should be made; the burden is upon the proponent of closure to justify a closure order"). The "extraordinary circumstances" test cited by Remington (Br. 11) was explicitly rejected by the Ninth Circuit twenty years ago as "incompatible with our circuit's law." *Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 475 (9th Cir. 1992).

> **A.  Remington Has Not Demonstrated Compelling Reasons for Continued Secrecy Sufficient to Overcome the Public's Federal Common Law Right of Access.**

As Mr. Barber explained in his Opening Brief, at 7-12, proponents of secrecy must make two showings to overcome the public's federal common law right of access. Remington has made neither.

First, they must "articulate compelling reasons supported by specific factual findings" identifying the interests favoring continued secrecy. *Kamakana*, 447 F.3d at 1178-79, 1181 (citation omitted). Sufficient "articulable facts," *id.* at 1181, include evidence that disclosure would result in "improper use of the material for scandalous or libelous purposes" or "infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434. Courts may not, however, rely on "hypothesis or conjecture" when determining whether a litigant has an identifiable interest favoring secrecy. *Id*.

Remington's purported concern that the "policy of encouraging settlements" would be undermined is not the type of "articulate[d] compelling reasons supported by specific factual findings" that justify continued secrecy in this case. For instance, what "specific factual findings" show that Remington would have gone to trial had Judge Hatfield not sealed the eighteen court records? As the Third Circuit remarked, "[t]he parties might prefer to have confidentiality, but this does not mean that they would not settle otherwise. For one thing, if the case goes to trial, even more is likely to be disclosed than if the public has access to pretrial materials." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) (citation omitted). Likewise, what specific "future actions and decisions" by Remington, Br. 7, would be frustrated by the company's reliance on court secrecy here? What specific facts demonstrate that Remington would be "discourage[d]," *id.* at 11, from settling cases in the future if these records were unsealed? And on what basis can Remington claim that public access here would undermine "the public policy of encouraging settlements," *id.* at 12, generally? Remington's silence with respect to each of these questions—and its failure to provide *any* specific factual findings in support of its purported "interest" in secrecy in this case—is fatal to its opposition. It is not enough for Remington simply to aver that secrecy promotes settlements.

Second, Remington failed to show that this purported interest also *outweighs* the public's interest in access. *Kamakana*, 447 F.3d at 1181. As numerous courts have held, "the generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law

4

right of access." *Bank of Am. Natl. Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 346 (3d Cir. 1986); *see also S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849-50 (5th Cir. 1993) (district court abused its discretion in sealing transcript of settlement proceedings without considering the public's right of access); *Daines v. Harrison,* 838 F. Supp. 1406, 1408-09 (D. Colo. 1993) ("interest in promoting settlement" insufficient to rebut the presumption of public access to court filings). More importantly, in the Ninth Circuit, "[t]he right of access to court documents belongs to the public, and the [parties] were in no position to bargain that away." *San Jose Mercury News, Inc., v. U.S. District Court,* 187 F.3d 1096, 1098 (9th Cir. 1999).

As Mr. Barber explained in his Opening Brief (2-6, 15-18), the public's interest in obtaining access to the remaining sealed documents in this case is especially compelling given the public safety issues at stake—and given that Remington continues to deny that its rifles "are in any way defective." Remington Br. 9 n.5.

The March 28, 1995 hearing transcript, doc. 410, is of particular interest. The plaintiffs had just moved for sanctions against Remington based on its alleged failure—for three years—to produce "thousands of documents" responsive to discovery requests that directly proved the company knew of the propensity of its rifles to fire without a trigger pull for decades. *See* Br. in Supp. Pls.' Mot. for Sanctions, doc. 367 (attached as Exhibit A), at 7-10; doc. 369 (Exhibit C – The

5

New Documents) (attached as Exhibit B); dkts. 399, 410.[2] Before the court could rule, the March hearing was held and the case settled. Dkt. 385.

This transcript is especially valuable because, on the *same day* that Remington's counsel appeared before Judge Hatfield in an effort to avoid sanctions, the company was evaluating new fire control designs that would "Solve FSR"—the "fire on safety release" defect that killed Gus Barber and injured Brent Aleksich. Remington Arms Co., "Fire Control: Design Review," March 28, 1995 (*Quinonez v. Remington Arms Co.*, No. 2:11-cv-02319-NVW (D. Ariz. doc. 30-2) (attached as Exhibit C).[3]

Regardless of whether there was originally a sound basis for closing the March hearing, the hearing transcript should not be forever sealed. As the Ninth Circuit explained:

> Even where denial of access is appropriate, it must be no greater than necessary to protect the interest justifying it…. Thus, transcripts of properly closed proceedings must be released when the danger of prejudice has passed.

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 947-48 (1998). Once a hearing transcript is reduced to writing and filed with the court, it becomes a court record to which the public's right of access generally attaches. *See Warth v. Dep't*

---

[2] "Dkt." indicates content available on the Docket Report. "Doc." indicates the actual filing.

[3] Remington's argument that the *Hull* verdict shows its Model 700 rifles are safe (Br. 9 n. 5) is belied by its admission that the FSR defect could be fixed by merely implementing a new fire control. *See* Exhibit C.

*of Justice*, 595 F.2d 521, 522 (9th Cir. 1979) (trial transcript is court document). As the Second Circuit remarked, "[i]t would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?" *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (internal quotation and citation omitted). Indeed, the "greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings." *United States v. General Motors*, 99 F.R.D. 610, 612 (D.D.C. 1983). Here, the public's interest in the March hearing transcript is certainly greater than some amorphous "public policy of encouraging settlements."

None of the cases Remington cites, Br. 7-10, support its contention that its interest in secrecy outweighs the public's interest. Most have nothing to do with the right of access at all. Others—*FDIC v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982), and *FDIC v. Ernst & Ernst*, 92 F.R.D. 468, 472 (E.D.N.Y. 1981)— utilize the "extraordinary circumstances" test that was rejected by the Ninth Circuit. *See Beckman Indus.,* 966 F.2d at 475. The remaining cases are easily distinguishable.[4]

---

[4] For example, in *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991) (Remington Br. 10), the intervenors were aware of the litigation before the confidentiality order was entered, and thus (unlike Mr. Barber) had an opportunity to challenge it then. And the issue in *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143-44 (2d Cir. 2004) (Remington Br. 12), was whether the public's interest in the *specific dollar amount* of a confidential settlement outweighed the parties' desire for confidentiality. The court ruled that a transcript discussing the settlement terms

*cont'd on next page*

### B. Remington Has Not Demonstrated a Narrowly-Tailored Overriding Interest Sufficient to Overcome the Public's First Amendment Right of Access.

Remington has not identified any "overriding interest" strong enough to overcome the public's First Amendment right of access here. *Oregon Pub. Co*, 920 F.3d. at 1465. Nor has the company demonstrated that permanent sealing of the remaining records is "narrowly tailored" to serve that interest. This Court should thus grant Mr. Barber's Motion on the basis that the public has a First Amendment right of access to these records.

## II. AS A FACTUAL MATTER, PERPETUAL SEALING OF THE REMAINING DOCUMENTS COULD NOT HAVE BEEN BARGAINED-FOR CONSIDERATION FOR THE SETTLEMENT.

Remington's failure to articulate a sufficient legal basis for keeping the remaining *Aleksich* records under seal warrants public access here regardless of whether the parties bargained for the sealing as a term of settlement. However, Remington's factual assertion that "the only portion of the *Aleksich* lawsuit that remains confidential are the materials ordered sealed by Judge Hatfield as part of the consideration for the settlement," Br. 2, fails as well.

---

could be made public so long as the confidential information was redacted. *Id*. at 144. In a statement that resonates here, the *Gambale* court cautioned that parties "cannot expunge the public interest [in accessing court records] by the simple expedient of filing a stipulation of dismissal with the court. The public's stake in the propriety and particulars of the court's adjudication does not evaporate upon the parties' subsequent decision to settle." *Id*. at 140.

First, there is certainly no basis for documents 390-398 to remain under seal. Judge Hatfield's December 22, 1995 order sealed documents **399** (*not* 390) through 406 and 410. Dkt. 406. As a courtesy, Mr. Barber agreed to refrain from accessing documents 390 to 398 until this Court had an opportunity to consider Remington's claim that Judge Hatfield's December order was erroneous. Doc. 427-1. Remington's conclusory and unsubstantiated assertions, Br. 2 n. 1, are insufficient to justify continued sealing of these records, and should be rejected.[5]

### A. Non-Substantive Procedural Records.

To begin, a number of the documents involve mere procedural requests, such as motions and orders to extend time to file, dkts. 392, 394, 397, 398, 402, 403, and a change-of-address notice, dkt. 400. Remington's assertion that the sealing of these records (all filed in July and October 1995) was a term of the parties' March 1995 settlement is thus not credible. Accordingly, the Court should unseal them immediately.

### B. Records Involving Remington's Application for Findings of Contempt and Sanctions Against Mr. Miller.

The next category of sealed records involves Remington's application for findings of contempt and sanctions against Mr. Miller. Dkts. 390-91, 393, 395,

---

[5] Remington's statement that the "Docket Report itself shows docket entries 390 through 398 having been sealed" does not suggest otherwise. There are numerous other entries that the Docket Report similarly labels "SEALED," or "UNDER SEAL," which are publicly accessible. *See, e.g.,* dkts. 334, 407-09, 411-14.

401, 404-06.  Again, the record does not support Remington's contention that these records were sealed as consideration for the parties' settlement.

Remington repeatedly insists that it was the plaintiffs' agreement not to pursue sanctions against it that was consideration for the settlement:

- "As part of the quid-pro-quo for settlement, the Plaintiffs' attorney, Mr. Miller, agreed to withdraw his motion for discovery sanctions previously filed with the Court." (Remington Br. 4.)

- "[I]n keeping with the bargained for terms of the settlement agreement, the Plaintiff's motion 'to w/draw [the motion] for sanctions' was entered with the Court."  (Remington Br. 5.)

- "[T]he parties settled *Aleksich* because, in part, Mr. Miller agreed to withdraw his motion for sanctions . . . ."  (Remington Br. 12.)

While Remington admits that this category of sealed documents "relate[s] to Defendants' Application for an Order to Show Cause Against Mr. Miller," it contends that the sealed documents contain "information related to the content of" the sanctions motion and "center[] on the very terms and conditions of the settlement agreement."  Br. 6.  But even if withdrawal of the motion for sanctions was a condition of settlement, it does not follow that the parties also agreed—as consideration for the settlement—that Remington's efforts *three months later* to seek a contempt order against Mr. Miller should be sealed forever.  Remington's attempt now to sweep the still-sealed contempt documents under the umbrella of "settlement terms" cannot withstand scrutiny.

First, the confidentiality provision in the parties' own settlement agreement states only that the "amount, terms, and conditions of this settlement" must remain confidential—and nowhere requires confidentiality for future pleadings or orders. Doc. 388 (attached as Exhibit C) at 2-3.[6] If the parties wanted to condition their settlement on the sealing of *future* court records, they could have said so.[7]

Second, to the extent Remington accurately claims that the remaining sealed documents *do* "contain[] information related to the content of Mr. Miller's [sanctions motion]," Br. 6, that motion and its supporting memorandum are already publicly available (and technically have been since December 22, 1995). Dkt. 406. And, of course, both Judge Hatfield and the Ninth Circuit refused to hold Mr. Miller in contempt for distributing these documents to others. *See id.*; doc. 414, Memorandum at 2 (9th Cir. May 16, 1997) (affirming Judge Hatfield's holding on the ground that "[t]he protective order and confidentiality provision of the settlement agreement *do not explicitly prohibit disclosure of the Aleksichs' sanctions motion*") (emphasis added) (Exhibit E).[8]

---

[6] Mr. Barber does not seek public access to the "amount, terms, and conditions" of the Aleksiches' settlement. To the extent any of the remaining sealed records contain such information, they can be redacted and the remainder unsealed.

[7] For example, the confidentiality clause at issue in one of the cases Remington cites "contained specific proscriptions against disclosure of the court file, as well as of 'any document, information or discussion relation to the Settlement Agreement which have taken place and *will take place*.'" *City of Hartford*, 942 F.2d at 132 (emphasis added).

[8] The Ninth Circuit did not, as Remington suggests, hold that the *Aleksich* records should be permanently sealed from public access.

### C. Records Involving the Transcript of the March 28, 1995 Hearing.

The final category of records remaining under seal involve records concerning the Court's March 28, 1995 hearing ("March hearing"), including the transcript. Dkts. 396-97, 399, 406, 410.

For the same reasons identified above, there is no reason to keep the transcript records under seal. The substance of the discovery abuse allegations—which almost certainly was addressed at the March hearing—is already public, and the settlement's confidentiality provision does bar public access to that information. Doc. 388 p. 2-3 (Exhibit D); doc. 414 (Exhibit E).[9] Should any transcript record disclose the amount or specific terms of the settlement, that information can be redacted. *See Gambale*, 377 F.3d at 144.

Second, Judge Hatfield's May 11, 1995 dismissal order confirms that he ordered the transcript sealed *not* as part of the parties' settlement, but rather in his ruling on Plaintiffs' motion to withdraw the sanctions motion. Doc. 389 (Exhibit F). That order addressed the two pending issues separately. First, in Paragraph (1), Judge Hatfield granted the motion to withdraw the sanctions motion and ordered that "the substance of all discussion that occurred relative to the referenced motion for sanctions shall remain confidential." *Id.* at 2. Then, in Paragraph (3), the Court addressed the parties' stipulation for dismissal. That paragraph noted that, "*in accordance with the stipulation of the parties concerning dismissal with*

---

[9] Interestingly, the transcript of the March hearing was not prepared by the court reporter, nor filed with the Court, until *Remington* requested transcription on July 28, 1995—nearly three months after the parties had settled. Dkts. 396-97.

12

*prejudice*, all terms of the compromise agreement and settlement effected between the parties to this action shall remain confidential, and, accordingly the terms and conditions thereof shall not be divulged by any of the parties . . . ." *Id.* at 3 (emphasis added). Had the sealing related to the sanctions motion been "in accordance with the stipulation of the parties concerning dismissal with prejudice," the Court could have so ordered. The more likely explanation is that sealing the March hearing transcript—like the other documents Remington urges the Court not to unseal—was not a term of the parties' settlement at all, and there is no factual or legal basis for keeping it sealed.

## CONCLUSION

The Court should unseal the remaining sealed *Aleksich* records.

Respectfully submitted this 3rd day of April, 2012.

/s/ William A. Rossbach
William A. Rossbach
ROSSBACH HART, P.C.

Amy Radon
Leslie A. Bailey
PUBLIC JUSTICE, P.C.
(admitted *pro hac vice*)

Richard Ramler
RAMLER LAW OFFICE, P.C.

*Attorneys for Intervenor Richard Barber*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(A) of United States District Court Rules for the District of Montana, I certify that the word count calculated by Microsoft Word is 3,245 words, excluding captions and certificates of service and compliance.

Respectfully submitted this 3rd day of April, 2012.

/s/ William A. Rossbach
William A. Rossbach
ROSSBACH HART, P.C.

*Attorney for Intervenor Richard Barber*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2012, I served a true and accurate copy of the foregoing, REPLY BRIEF IN SUPPORT OF RICHARD BARBER'S MOTION TO UNSEAL *ALEKSICH* COURT FILINGS, on the following counsel, by the method indicated below:

Robert M. Carlson                      [ ] U.S. Mail
CORETTE POHLMAN & KEBE      [ ] Overnight Mail
129 West Park Street                 [ ] Hand Delivery
PO Box 509                          [ ] Facsimile
Butte, MT 59703                    [X] ECF
Louis Aleksich                      [ ] U.S. Mail
1216 West Aluminum            [ ] Overnight Mail
Butte, MT 59701                    [ ] Hand Delivery
                                        [ ] Facsimile
                                        [X] E-Mail

Respectfully submitted this 3rd day of April, 2012.

                                        /s/ William A. Rossbach
                                        William A. Rossbach
                                        ROSSBACH HART, P.C.

                                        *Attorney for Intervenor Richard Barber*