IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| LOUIS ALEKSICH, RAINELLE ALEKSICH and BRENT ALEKSICH,<br><br>Plaintiffs,<br><br>RICHARD BARBER,<br><br>Intervenor,<br><br>vs.<br><br>REMINGTON ARMS CO., INC., and E. I. DuPONT DE NEMOURS & CO.,<br><br>Defendants. | CV- 91-05-BU-RFC<br><br>ORDER PARTIALLY GRANTING BARBER'S MOTION TO UNSEAL<br><br>**FILED**<br>SEP 0 4 2012<br>PATRICK E. DUFFY CLERK<br>BY _____<br>Deputy Clerk |

## I. INTRODUCTION

This products liability action was filed in 1991 by the family of Brent Aleksich, a fourteen-year old who was injured when the family's Remington Model 700 rifle accidentally discharged. Just before the trial was set to commence in March of 1995, the parties settled all claims. As part of the settlement, Plaintiffs agreed to withdraw their pending motion for discovery sanctions. On May 11, 1995, Judge Hatfield dismissed the action, sealed the entire case file, and ordered all involved to keep confidential all discussion concerning the motion for

1

sanctions, as well as the terms and conditions of the settlement. Doc. 389, (the "May 1995 Order").

In December 1995, Judge Hatfield denied Remington's motion to sanction Plaintiffs' counsel Richard Miller for violating the confidentiality order by distributing Plaintiffs' motion for sanctions. Doc. 406 (the "December 1995 Order"). The December 1995 Order makes clear Judge Hatfield's intent as to what discussions were to remain confidential and exactly what documents were to remain sealed. As recounted in recent Orders of this Court, (docs. 425 & 435), the December 1995 Order lifted the blanket seal on the case file and sealed only two categories of documents: (1) official transcripts, which means the transcript of the March 28, 1995 conferences between the Court and counsel, because that is the only transcript in the file, and (2) "all documents, including the present Order, relating to the defendant's application for order to show cause and for finding of contempt filed July [5][1], 1995 (specifically those documents commencing with document enumerated No. [390][2] through 405, and including the present Order)."[3]

---

[1] Although the December 1995 Order says July 11, 1995, the docket sheet says the application for order to show case was filed on July 5, 1995.

[2] As recounted in the August 7, 2012 Order, Judge Hatfield must have meant doc. 390-406, not 399-406. Doc. 435.

[3] Regardless, the entire file remained sealed until this year. Documents 390-406 and 410 remain sealed pending the Court's ruling on the instant motion. Docs. 425 and 435.

2

The December 1995 Order also made clear what "discussions" were to remain confidential. First, Judge Hatfield expressly states, after a review of the transcript of the March 28, 1995 conference (doc. 410) that "the colloquy which occurred among counsel and the court relative to the compromise agreement and settlement effected by the parties reflects the parties' agreement that the 'terms and conditions' of the compromise agreement and settlement were to remain confidential." Doc. 406, p.2. Second, Judge Hatfield recounted the parties agreement that "any discussion which occurred among the court, or its staff, and counsel relative to the motion for sanctions, and any record generated in relation to those discussions, would remain confidential." Doc. 406, p.3. Later, in rejecting Remington's claim that Miller breached the confidentiality order by distributing his motion for sanctions, Judge Hatfield said:

> Contrary to the assertion of defendants, the confidentiality provisions of the [May 1995 Order (doc. 389)] ... pertained to the disclosure of the discussion which occurred among the court and counsel relative to the court's anticipated disposition of the motion for sanctions, and specifically, the burden which the court intended to impose on defendants relative to the motion. In sum, the conclusions expressed by the court regarding the procedure it intended to implement in disposition of [Plaintiffs'] motion for sanctions constituted the material subjected to the directive of the court.[4] The court would be

---

[4] It appears that the discussion relating to the "burden which the court intended to impose on defendants relative to the motion [for sanctions]" occurred on March 27, 1995, the date originally scheduled for trial. *See* doc. 406, pp.1-2 & doc. 393, p.3. No transcript of this

3

remiss were it to allow the defendants to expand the agreed upon confidentiality to preclude disclosure of the other pleadings and documents of record.

Doc. 406, p.4. In a sealed proceeding, the Court of Appeals for the Ninth Circuit affirmed Judge Hatfield's decision that Plaintiffs' motion for sanctions was not subject to the confidentiality provision of the May 1995 Order. Doc. 434-6.

In October of 2000, Intervenor Richard Barber's son Gus was killed by a Model 700 rifle. He alleges the rifle fired without a trigger pull as Gus's mother pushed the safety to the "off" position to unload it. Doc. 416-1, ¶ 5. Barber, who is a firearms expert dedicated to exposing what he believes is a design flaw in the trigger mechanism of the Remington Model 700 rifle, was allowed to intervene in this case so that he could move to unseal the portions of the file that remain sealed. Doc. 424. Barber believes that public disclosure of the information contained in the sealed documents will force Remington to issue an adequate safety warning and recall the allegedly defective trigger mechanisms from the market.

Pending before the Court is Barber's Motion to Unseal *Aleksich* Court filings. Doc. 426. Barber argues there are no compelling reasons supported by

---

conference is contained in the file and it is unclear whether this discussion occurred on the record. Since the March 27, 1995 discussions are not court records subject to the common law right of access, this Order does not lift the confidentiality imposed by Judge Hatfield as to those discussions.

4

specific facts outweighing the public's right to access these court records, especially since they contain information relevant to public safety. Remington, on the other hand, argues these documents should remain sealed because they relate to the confidential settlement of this case and unsealing them would undermine the settlement and discourage future settlements. But since only a couple of the sealed documents relate to the terms and conditions of the settlement–to which Barber does not seek access–most of the documents must be unsealed.

## II. ANALYSIS

The common law recognizes a qualified right to inspect and copy judicial records in both civil and criminal proceedings. *United States v. The Business of the Custer Battlefield Museum and Store,* 658 F.3d 1188, 1192 (9th Cir. 2011).[5] Since the materials at issue here do not fall within the narrow range of documents that have "traditionally been kept secret for important policy reasons," such as grand jury materials or warrant materials during a pending investigation, there is

---

[5] Barber also argues that the First Amendment guarantees a right to inspect judicial documents, but it is not yet established in the Ninth Circuit whether the First Amendment right of access applies to civil cases as it does to criminal cases. *Perry v. Brown,* 667 F.3d 1078, 1088 (9th Cir. 2012). In any event, since the common law analysis requires that all documents except those containing the terms and conditions of the settlement be unsealed, and the Court is confident that the First Amendment does not require access to the terms of a confidential settlement of a private dispute, there is no need to consider whether the First Amendment right of access applies here. *See Custer Battlefield Museum and Store,* 658 F.3d at 1197; *Perry,* 667 F.3d at 1088.

5

no question that the common law right of access applies. *Custer Battlefield Museum and Store,* 658 F.3d R 1192, *citing Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006). Accordingly, the analysis begins with a "strong presumption in favor of access." *Kamakana,* 447 F.3d at 1178, *quoting Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003).

The party seeking to seal judicial records can only overcome this strong presumption by "articulating compelling reasons supported by specific factual findings ... that outweigh the general history of access and the public policies favoring disclosure ..." *Id.* at 1178-79. In conducting this analysis, the Court must "conscientiously balance the competing interests of the public" and Remington. *Id.* at 1179. A decision to seal certain records must be based on a compelling reason supported by a factual basis free of hypothesis or conjecture. *Id.*

Generally, "compelling reasons" that outweigh the public's interest in disclosure are found where the judicial records could be used for improper purposes, such as gratifying private spite, promoting public scandal, circulating libelous statements, or releasing trade secrets. *Id., citing Nixon v. Warner Communications, Inc.,* 435 US 589, 598 (1978). The mere fact that release of judicial records will lead to a party's embarrassment, incrimination, or exposure to

6

further litigation is not a compelling reason sufficient to outweigh the public's right to access judicial records. *Id.*

Remington's opposition brief makes no attempt to apply these rules and, in fact, cites none of the familiar Ninth Circuit cases governing access to judicial records. Remington argues only that Barber's motion should be denied because the terms and conditions of confidential settlements should remain confidential and unsealing these documents now would undermine the settlement and discourage litigants from settling cases. In so arguing, Remington asserts "the only portions of the *Aleksich* lawsuit that remain confidential are the materials ordered sealed by Judge Hatfield as part of the consideration for the settlement" and that "Judge Hatfield intended to seal only those materials related to the quid-pro-quo that resulted in the *Aleksich* settlement." Doc. 428, p. 2, 3, *but see id* at p. 6 ("Docket entries 390 through 406 and 410 are all filings related to" Remington's motion to sanction Miller.).

But with the exception of the transcript of the March 28, 1995 conference (doc. 410), which was actually transcribed months after the settlement when Remington was trying to prove that Miller had violated the confidentiality order (doc. 396), these documents cannot possibly relate to the quid-pro-quo that led to the settlement because they did not exist until four months after the case settled on

7

March 28, 1995. The docket sheet, the December 1995 Order, doc. 406, p.5, and a review of documents 390-406 confirm that these documents all relate to defendants' motion to sanction Miller for distributing Plaintiffs' motion for discovery sanctions. Again, Barber is not interested in unsealing the terms and conditions of the settlement. Doc. 434, p. 11, n.6.

Accordingly, Remington's purported compelling reason to seal–that unsealing would undermine the settlement–is inapplicable to the vast majority of these documents. Many of these documents relate to procedural motions, such as motions for extensions of time. Docs. 392, 394, 396-400, 402-03, and 405. It is difficult to imagine a compelling reason to maintain such documents under seal.

The remainder of documents 390-406 are briefs on Remington's motion to sanction Miller, as well as Judge Hatfield's December 1995 Order denying the motion and lifting the blanket seal. Docs. 390-91, 393, 395, 401, 404, and 406. The actual text of these documents make no mention of the terms and conditions of the settlement, except that a couple documents mention Plaintiffs' agreement to withdraw their motion for discovery sanctions as part of the settlement. But the Court presumes confidentiality of that particular settlement condition is not a priority since it is repeated throughout Remington's brief in opposition to the motion to unseal, and Remington has made no attempt to seal it.

8

The actual, unredacted Settlement Agreement and Release, however, is the second document attached to Remington's July 5, 1995 brief in support of motion to sanction Miller. Doc. 391. Barber has not sought public access to this document. Moreover, there is no general history of public access to confidential settlement agreements to private litigation and public access to such documents would undermine existing settlements and perhaps deter future settlements. Accordingly, the Court has no trouble concluding there are compelling reasons to continue the seal on the Settlement Agreement and General Release.

That leaves the transcript of the March 28, 1995 conferences. Doc. 410; also attached to doc. 391. The first 44½ pages have nothing to do with settlement, but rather are a discussion between Judge Hatfield's law clerk and counsel concerning purely procedural matters about how Plaintiffs' counsel would use the newly produced Remington documents at trial, how many depositions Plaintiffs would introduce, whether Plaintiffs would be allowed to use the newly-produced documents in opening. The discussion is typical of final pretrial conferences and the Court finds it hard to believe this transcript would be of interest to anyone. Significantly, this transcript does not contain the "discussion which occurred among the court and counsel relative to the court's anticipated disposition of the motion for sanctions, and specifically the burden which the court intended to

9

impose upon defendants relative to the motion." Doc. 406, p.4. It appears that discussion, which remains confidential, occurred the day before on March 27, 1998, *see id.*, p.1-2, doc. 393, p.3 and there is no evidence that conference was transcribed. Accordingly, since pages 1 through line 16 of page 44 do not concern settlement, Remington's only purported compelling reason is inapplicable, and this portion of the transcript must be unsealed.

After the morning conference on March 28, 1995 with Judge Hatfield's law clerk, the parties went on the record with Judge Hatfield at approximately 3 p.m. to notify the Court the case had settled. Doc. 410, p.44, line 17. The discussion is brief, addressing the procedure to be followed in memorializing the settlement and dismissing the case, as well as the confidentiality requirements. The only thing in the transcript that must be sealed is the amount of the settlement, which is stated on line 5 of page 45. Since the amount can be easily redacted, the Court sees no reason why the remainder of the transcript should remain sealed.

## IV. CONCLUSION AND ORDER

Remington's has only offered one compelling reason to maintain the seal on documents 390-406 and 410–that public disclosure would defeat the 1995 agreement, undermine the policy favoring settlement, and discourage future settlements. But since documents 390-406 were all created months after the

10

settlement, and the only mention of settlement terms and conditions occurs are in two attachments to those documents, Remington's reason for maintaining the seal is inapplicable, except to the two attachments. Similarly, the transcript of the March 28, 1995 conference (doc. 410, also attached to doc. 401) only mentions settlement in a few pages at the end, and the only objectionable language is the amount of the settlement, which can be easily redacted.

Accordingly, **IT IS HEREBY ORDERED** that Intervenor Barber's Motion to Unseal is **GRANTED IN PART**. The Clerk of Court is directed to unseal documents 390-406, except that the Settlement Agreement and General Release, the second attached document to doc. 391, is to remain sealed. The Clerk of Court is further directed to redact the amount of the settlement from line 5 of page 45 of the transcript of the March 28, 1995 conferences. Doc. 410. Since that transcript is also attached to doc. 401, the Clerk of Court shall also ensure that the settlement amount is redacted from line 5, page 45 of that copy of the transcript.

Dated this \_\_4\_\_ day of September, 2012.

/s/ Richard F. Cebull
Richard F. Cebull
United States District Judge